ROBERT D. McKNELLY *et al.*, Plaintiffs, v. WHITECO HOSPITALITY CORPORATION *et al.*, Defendants (Hydro Spa, Inc., Third-Party Plaintiff-Appellee; South Seas Pools Company, Third-Party Defendant-Appellant; Regal Marine Industries, Inc., Third-Party Defendant).

First District (5th Division)   No. 84—1286

Opinion filed March 1, 1985.

Willis R. Tribler and C. William Busse, Jr., both of Chicago (Haskell & Perrin, of counsel), for appellant.

D. Patterson Gloor, Kevin G. Burke, and John P. Stansbury, all of Chicago (Cassiday, Schade & Gloor, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) from a trial court order denying third-party defendant South Seas Pools Co.'s motion to quash service of summons.

The original complaint was filed against several defendants, including third-party plaintiff Hydro Spa, by an individual who slipped and fell in a whirlpool or hot tub in a Holiday Inn in Merrillville, Indiana. Hydro Spa filed its third-party complaint against South Seas, seeking contribution and common law indemnity based upon allegedly improper installation of the whirlpool. South Seas, filing a special and limited appearance, moved to quash service of summons for lack of personal jurisdiction supported by an affidavit of its president—Paul Williams—. which, in substance, asserted that South Seas transacted no business in Illinois.

The trial court denied the motion to quash, and we granted an application for leave to appeal under Rule 308, with the issue identified by the trial court as whether South Seas "had minimum contacts or was transacting business in the State of Illinois so as to be subject to the jurisdiction of Illinois courts, pursuant to Ill. Rev. Stat. 1983, ch. 110, par. 2—209" (the long-arm statute).

OPINION

■ While the issue as certified for interlocutory appeal is whether South Seas "had minimum contacts or was transacting business in the State of Illinois," we note that an analysis under the long-arm statute (Ill. Rev. Stat. 1983, ch. 110, par. 2—209) must be the first step in our inquiry, and only if the actions of the defendant bring it within the reach of that statute is it necessary for us to consider the due process question which involves minimum contacts (see *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847; *Green v.*

*Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203).

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State; ***."
Ill. Rev. Stat. 1983, ch. 110, par. 2—209(a).

Thus, the seminal issue presented here is whether Hydro Spa has stated a cause of action arising from the transaction of business in Illinois by South Seas and, in this regard, the person bringing the action—Hydro Spa, here—bears the burden of proof in establishing jurisdiction. *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 453 N.E.2d 828.

The contention of Hydro Spa that South Seas transacted business in Illinois centers around the discussion testified to by Paul Williams, president of South Seas, that he had with Robert Kingsley, president of Hydro Spa, at the Chicago trade show in 1977 or 1978. It is the position of Hydro Spa that the discussion was "the framework for an Indiana distributorship of Hydro Spa products for South Seas"; in other words, that the discussion was a transaction initiating the distributor agreement entered into later in California for the purchase of Hydro Spa products. We have examined the deposition, however, and we find that Williams stated he went to the Chicago trade show, as he had to many similar trade shows in other cities in prior years, to discuss the various products displayed there with their exhibitors. At the Chicago trade show he talked with 80% of the 250 exhibitors. His discussions with Kingsley were primarily concerned with the Hydro Spa products, but he said at one point in his deposition that although he and Kingsley talked "about a lot of things" they also "may have" talked about a distributorship arrangement. When asked later in the deposition whether a distributorship was discussed at the Chicago trade show, he replied that he had dinner with Kingsley and they talked "just generalities" which "did at one time touch upon a distributorship agreement." These quotes are the only discussions by Williams, in Chicago, concerning any agreement, and there was no other testimony or other evidence offered in that regard by either party. Nevertheless, defendant posits that those discussions were "the framework" for a distributorship agreement which was later entered into in California. We note, however, that there is nothing in the record to indicate who initiated

those or any other discussions or meetings concerning a distributorship agreement, nor is there any indication whatsoever that at the Chicago trade show any details concerning such an arrangement were discussed or that further meetings were to be held. As will be further discussed below, we fail to see how the discussion testified to by Williams could be considered to be a business transaction initiating the eventual distributory agreement.

It is our view that *Scovill Manufacturing Co. v. Dateline Electric Co.* (7th Cir. 1972), 461 F.2d 897, upon which Hydro Spa relies, is more favorable to the position of South Seas. There, the defendant was an English manufacturing company which sent representatives to the bi-annual Chicago trade shows for the express purpose of contacting prospective customers and soliciting private label contracts. Defendant's product manager contacted plaintiff's product manager at the July 1968 housewares show and, after telling him that defendant would manufacture hair curler sets for plaintiff, they discussed possible prices, quantities, and the range of models involved. Although further negotiations and eventual execution of the contract took place outside of Illinois, the parties discussed the proposed design for the product at the January 1969 housewares show in Chicago, and representatives of the two companies met in Chicago at the July 1969 housewares show to examine the sets, to discuss a problem, and to review the artwork for the packaging. The *Scovill* court indicated that such Illinois contacts could not be considered "casual" or "incidental" and went on to state: "A defendant who sends an agent into Illinois to solicit or to negotiate a contract is transacting business within the statutory definition." 461 F.2d 897, 900.

In so stating, the *Scovill* court distinguished defendant's contacts from those which the court in *Kaye-Martin v. Brooks* (7th Cir. 1959), 267 F.2d 394, *cert. denied* (1959), 361 U.S. 832, 4 L. Ed. 2d 75, 80 S. Ct. 84, found were not sufficient to constitute the transaction of business in Illinois. In *Kaye-Martin*, two New York plaintiffs sued defendant, an Arkansas resident, over a contract for the sale of defendant's stock in an insurance company. Most of the negotiations for and the execution of the contract took place outside of Illinois, but defendant did meet the New York broker in Chicago, where defendant was attending a convention, to discuss the terms of the proposed sale. The court held that the meeting in Chicago did not justify assertion of jurisdiction and noted that defendant was not in Chicago for the purpose of negotiating with plaintiff but to attend a convention, and Chicago was selected as a meeting site simply for convenience.

Here, Williams—of South Seas—attended the Chicago trade show

as he had others in the past in other cities, to discuss products with their exhibitors, and the limited discussion with Kingsley concerning the possibility of a distributory arrangement we believe, under reasoning of *Scovill* and *Kaye-Martin*, could only be considered casual or incidental. (See also *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391.) In the light thereof, we find that Hydro Spa has failed to establish that South Seas transacted business in Illinois sufficient to support jurisdiction under section 2—209 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—209).

■ Moreover, even had we found that South Seas in the discussions at the Chicago trade show had transacted business by initiating the eventual distributory agreement, jurisdiction would not be available for the additional reason that Hydro did not state a cause of action "arising from" the transaction of that business, as required by section 2—209(a). We reach this conclusion because (1) the arrangement eventually reached was a yearly, renewable purchase agreement allowing South Seas to purchase whirlpools directly from Hydro Spa; (2) the agreement was not renewed by Hydro Spa in 1979; (3) subsequently, Hydro Spa had a new Indiana distributor—AA Spa Company—in Bloomington, Indiana; (4) when South Seas called Hydro Spa in California to order the whirlpool for the Merrillville project, it was told to make the purchase from Hydro Spa's new distributor, AA Spa Company, from whom South Seas made the purchase, and (5) the purchase of this whirlpool was in no way related to any business activity of South Seas in the State of Illinois. Thus, Hydro Spa's third-party complaint, based upon alleged negligence in the installation of the whirlpool purchased by South Seas from AA Spa Company, did not assert a cause of action arising from the transaction of any business by South Seas in Illinois.

Since we have held that jurisdiction is not available under the long-arm statute (Ill. Rev. Stat. 1983, ch. 110, par. 2—209), we do not reach the due process question (see *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847).

For the reasons stated, we find that the trial court erred in denying defendant's motion to quash service of summons, and we reverse the trial court's order and remand this cause for further proceedings not inconsistent with the content of this opinion.

Reversed and remanded.

MEJDA, P.J., and PINCHAM, J., concur.