Dana SMALL, Plaintiff-Appellant,

v.

SHEBA INVESTORS, INC., and John Dade, Defendants-Appellees.

No. 86-2422.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1987.
Decided Feb. 18, 1987.

James P. Baker, Springfield, Ill., for plaintiff-appellant.

Paul Brown, Brown, Hay & Stephens, Springfield, Ill., for defendants-appellees.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sheba Investors, which runs fast food businesses in the Middle East, hired Dana Small to manage a restaurant in Riyadh, Saudi Arabia. Small started work in Riyadh in February 1984. Six months later he was arrested by Saudi officials and released on condition that he leave the country. Sheba told Small to go home and await instructions. After two months at home, Small learned that Sheba was no longer interested in his services. He filed this diversity suit, complaining that his contract of employment forbids Sheba's decision.

Small filed the suit in the district court in Springfield, Illinois. Sheba, a Delaware corporation with its principal place of business (that is, the corporate headquarters) in Knoxville, Tennessee, moved to dismiss for want of personal jurisdiction. The president of Sheba filed an affidavit stating that Sheba has never had an office in Illinois, owns no property in Illinois, and conducts no business in Illinois. Small agreed with all of this but replied that when Sheba first spoke with him about employment by telephone he was in Illinois, and that he remained in Illinois while he and Sheba corresponded about employment. He signed the contract in Illinois (and sent it to Knoxville for Sheba's approval), and he returned to Illinois after leaving Saudi Arabia. He was in Illinois when told he had been fired. This is enough, Small argued, both to establish jurisdiction under the long-arm statute of Illinois, Ill.Rev.Stat. ch. 110, ¶ 2–209, and to satisfy the due process clause of the fourteenth amendment, which restricts states' assertion of jurisdiction over non-residents.

Sheba conceded all of Small's factual allegations. A magistrate recommended that the court deny Sheba's motion to dismiss. But the court granted the motion, concluding that the Illinois long-arm statute did not support personal jurisdiction. Small relied on ¶ 2–209(a)(1), which grants jurisdiction when the claim for relief arises out of "[t]he transaction of any business within this State". Judge Mills, who served for 20 years on the Illinois bench, concluded that the long-distance negotiations between Small and Sheba did not add up to the "transaction of any business" in Illinois. We give some, although certainly not conclusive, weight to the construction of a state statute by a district judge sitting in that state, *Mosley v. Moran*, 798 F.2d 182, 187 (7th Cir.1986); *Goldstick v. ICM Realty*, 788 F.2d 456, 466 (7th Cir.1986). Ours is an appropriate case for deference, because the meaning of ¶ 2–209(a)(1) is open to fair debate.

The magistrate relied on *Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1st Dist.1977), and *Ziegler v. Hodges*, 80 Ill.App.2d 210, 224 N.E.2d 12 (2d Dist. 1967), to show that phone calls and letters from a non-resident may satisfy ¶ 2–209(a)(1). The district judge relied on *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981), and *Green v. Advanced Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), two later decisions by the Supreme Court of Illinois that the magistrate had not cited. The parties in this court take the same course. Small cites *Morton* and *Ziegler*, which have factual similarities (especially *Ziegler*, for *Morton* involved a substantial publicity campaign in Illinois by a promoter trying to sell swamp lands in Florida, while our case involves recruiting only a single employee). Sheba relies on *Green* and *Cook*. Sheba has the better of the argument—not only because *Green* and *Cook* are more recent, and more authoritative, but also because they undercut the major premise of *Morton* and *Ziegler*. Both of those cases start from the premise that ¶ 2–209 extends the jurisdiction of Illinois as far as the due process clause permits; each court then asks whether the due process clause permits an assertion of jurisdic-

tion. *Ziegler,* 80 Ill.App.2d at 214, 224 N.E.2d at 14 ("Jurisdiction under [the long-arm statute] has not been restricted to those cases alone where its language literally describes the activities of the defendant, and it is clear that the reach of the [transacting business] clause is intended to be as broad as the State's constitutional authority in the field."); *Morton,* 55 Ill. App.3d at 372, 13 Ill.Dec. at 82, 370 N.E.2d at 1109. *Cook* and *Green* hold, by contrast, that ¶ 2–209 does *not* assert the full constitutional power of the state and must be given an independent meaning. *Green,* 86 Ill.2d at 436, 56 Ill.Dec. at 660, 427 N.E.2d at 1206 ("A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible."); *Cook,* 87 Ill.2d at 200–01, 57 Ill.Dec. at 735, 429 N.E.2d at 852 ("In *Green* ... we held that the long-arm statute was not to be equated with the standard of due process."). *Morton* and *Ziegler,* which look through the long-arm statute to the due process clause, do not contain *any* construction of ¶ 2–209(a)(1) and do not assist us; their due process analysis is no longer the dispositive inquiry.

*Cook* deals with ¶ 2–209(a)(1). Lexington, a manufacturer based in Missouri, hired an employee with the assistance of two employment agencies in Massachusetts. A dispute arose about which agency should receive the fee. Lexington's first meeting with the employee took place in Chicago; Lexington also sold about $50,000 of goods per year at trade shows in Chicago and sold through jobbers to customers in Illinois, but it did not maintain offices or permanent representatives in Illinois. The court thought this insufficient under ¶ 2–209(a)(1). It said: "Lexington is not amenable to service under the long-arm statute because the cause of action did not arise from the transaction of business in Illinois." 87 Ill.2d at 198, 57 Ill.Dec. at 733, 429 N.E.2d at 850. Read literally, this passage equates the "transaction" of business with the genesis of the claim. See also *McKnelly v. Whiteco Hospitality Corp.,* 131 Ill.App.3d 338, 342, 86 Ill.Dec. 613, 616, 475 N.E.2d 992, 995 (1st Dist. 1985). Small's troubles began with an incident in Saudi Arabia, leading to a decision made in Tennessee. Even the contract on which Small sues did not become effective until signed by Sheba in Tennessee. Yet this may read too much into the passage, because the court also pointed out in *Cook* that the employee had not been hired at the meeting in Chicago and that "it cannot be said that the Chicago interview was any part in the negotiations that led to the hiring" of the employee, 87 Ill.2d at 198, 57 Ill.Dec. at 734, 429 N.E.2d at 851. It is fair to say that both sides may take some comfort from the discussion in *Cook*—and no earlier decision is authoritative, making the rule in Illinois hard to discern.

A few appellate cases after *Cook,* none cited by the parties, offer more specific but not entirely consistent tests. For example, *First National Bank of Chicago v. Boelcskevy,* 126 Ill.App.3d 271, 274, 81 Ill. Dec. 380, 383, 466 N.E.2d 1182, 1185 (1st Dist.1984), states that a person "transacts business in Illinois when substantial performance of his or her contractual duties is to be rendered in Illinois." *Carlson v. Carlson,* 147 Ill.App.3d 610, 613, 101 Ill. Dec. 384, 387, 498 N.E.2d 708, 711 (2d Dist.1986), adds, as a second sufficient condition for the use of ¶ 2–209(a)(1), "when a defendant invokes the benefits and protections of Illinois law in the contractual relationship." The court does not spell out what this might amount to. *Gordon v. Tow,* 148 Ill.App.3d 275, 280–81, 101 Ill. Dec. 394, 398, 498 N.E.2d 718, 722 (1st Dist.1986), takes a stance completely different in principle, although perhaps congruent in practice. *Gordon* says that the statute calls for a multifactor balancing test, with "who initiated the transaction, where the contract was entered into, and where the performance was to take place" among the things the court will consider. *Gordon* does not furnish either scales or weights for the balancing act. None of these cases is exactly on point—*Gordon*

dealt with the purchase of a partnership interest, *Carlson* was a divorce case, and *Boelcskevy* was an action on a guaranty—so we do not know how the courts of Illinois would apply or reshape their "tests" to an employment contract. But all of the courts agree that something more than negotiation of a contract with a resident of Illinois is necessary.

*Cook* holds that ¶ 2–209(a)(1) is not as broad as the due process clause permits. If the due process clause would permit Illinois to adjudicate Small's claim against Sheba, it would do so by the barest margin. Sheba initially called Small because Small's father, an employee of Sheba's in Saudi Arabia, asked Sheba to do so. That Sheba found Small in Illinois was irrelevant to Sheba's plans and probably even inconvenient; had Small been in Qatar, Sheba would have been delighted. Illinois played an equally peripheral role in the ensuing correspondence between Small and Sheba. And when Small left Saudi Arabia, Sheba did not tell him to loiter in Illinois, as if his location were useful to Sheba's business; Sheba just wanted to know where he was, and Small agrees that for all Sheba cared Small could have gone to Tibet. Sheba did not call on the resources or protection of Illinois, and the contract was to be performed out of state. The few "contacts" between Sheba and Illinois may have been enough for purposes of the fourteenth amendment—a difficult question, see *Madison Consulting Group v. South Carolina*, 752 F.2d 1193 (7th Cir.1985)—but there is nothing to spare. Unless ¶ 2–209(a)(1) is coterminous with the due process clause, and *Cook* tells us that it is not, Small must bring this suit elsewhere. We need not limn the contours of ¶ 2–209(a)(1).

AFFIRMED.