**GAINES PET FOODS CORP., Plaintiff,**

v.

**MARTIN BROTHERS INTERNATIONAL, Defendant.**

**No. 88 C 3022.**

United States District Court, N.D. Illinois, E.D.

Aug. 19, 1988.

Craig M. White, Wildman, Harrold, Allen & Dixon Chicago, Ill., for plaintiff.

Philip T. Powers, Altheimer & Gray, Chicago, Ill., Thomas A. Dubbs, Gary L. Johansen, Hall, McNicol, Hamilton & Clark, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

In this diversity case, Gaines Pet Food Corp. ("Gaines") seeks to recover money

damages from Martin Brothers International ("Martin Brothers") for breach of contract. Martin Brothers has moved to dismiss the complaint for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2). For the reasons set forth below its motion is granted.

## I

On 9 April 1986, Gaines entered into a distribution agreement with Martin Brothers. Under the agreement Gaines granted Martin Brothers a non-exclusive right to sell Gaines's food products outside the United States. In return, Martin Brothers agreed to use its "best efforts" to promote and sell Gaines's fare extraterritorially (excepting a few markets such as Canada and Japan). In order to purchase Gaines's products, Martin Brothers would submit a purchase order to Gaines; and Gaines was obligated to make delivery within 30 days after receiving the order.

Either party was entitled to cancel the agreement if (again with exceptions) the other failed to cure a material breach or default within 20 days of receiving written notice of the problem. Included as material breaches and defaults are failure "to pay any invoice when due" and failure "to make delivery of all orders."

The agreement was negotiated and executed in New York; and New York law governs its interpretation. At the time the agreement was executed, Gaines was a Delaware corporation with its principal place of business in New York; Martin Brothers was (and is) a New York corporation with its principal place of business in New York. Initially, Martin Brothers sent its purchase orders to Gaines's warehouse in East Hanover, New Jersey; and these orders were filled either by the same warehouse or another Gaines warehouse in San Mateo, California.

In late 1986 Quaker Oats Company purchased Gaines and transferred Gaines's offices from New York to Chicago; and on 30 December 1986 Quaker notified Martin Brothers that the agreement would be terminated as of 1 April 1987.[1] Presumably, based on this turn of events (though neither of the parties makes it clear) Martin Brothers sent a representative to discuss their relationship.

Gaines made the next move in February of 1987 and instructed Martin Brothers to start sending its purchase orders to Gaines's Chicago office. Martin Brothers did: it sent 28 purchase orders, received the goods, but decided not to pay. Gaines, understandably displeased with Martin Brothers' decision, filed this suit.

## II

Martin Brothers argues that it is not subject to jurisdiction[2] in Illinois under the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, sec. 2–209(a), or the "doing business" doctrine.[3] Gaines disagrees. We address both arguments below.

### A

Section (a)(1) of the Illinois long-arm statute confers jurisdiction over any person who "transacts business" in Illinois, provided the cause of action arises out of the acts constituting the "transaction of business", sec. 2–209(c). Although the Illinois courts have not developed a single specific test for determining whether given conduct amounts to "transacting business" (*see generally Small v. Sheba Investors, Inc.,* 811 F.2d 1163, 1165 (7th Cir.1987) (collecting Illinois Appellate Court cases offering divergent tests)), they have made clear that

---

**1.** Although the agreement was set to expire on 1 April 1987, it provided for an automatic renewal period of one year unless terminated for "valid cause" by either party upon ninety days prior written notice.

**2.** In a diversity action, of course, a federal court has personal jurisdiction over a non-resident defendant only if a court of the state in which it sits would possess personal jurisdiction. *J.*

*Walker & Sons. v. De Mert & Dougherty, Inc.,* 821 F.2d 399, 401 (7th Cir.1987).

**3.** On a challenge to personal jurisdiction, the plaintiff bears the burden of providing evidence sufficient to establish a prima facie showing of personal jurisdiction; to that end factual disputes are resolved in the plaintiff's favor. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987).

jurisdiction under the long-arm is not to be equated with jurisdiction under the Due Process Clause of the fourteenth amendment. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 200–01, 57 Ill. Dec. 730, 735, 429 N.E.2d 847, 852 (1981); *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981). Our Court of Appeals has read *Cook* and *Green* as holding that the long-arm "does *not* assert the full constitutional power of the state and must be given an independent construction." [4] *Sheba*, 811 F.2d at 1165; *see id.* at 1166 (holding that although a non-resident defendant's contacts may have permitted exercise of personal jurisdiction for due process purposes, they were insufficient to satisfy the long-arm because it is more restrictive than the constitutional requirement). It follows, then, that if a non-resident defendant's conduct satisfies the requirements of the long-arm, it necessarily comports with due process. With this in mind we turn to Martin Brothers' contention that it is not amenable to jurisdiction in Illinois under the long-arm.

Martin Brothers points out that its only contacts with Illinois came after Gaines moved its offices to Chicago. What were the contacts? Martin Brothers sent a representative to Chicago to meet with Gaines; it sent approximately 28 purchase orders to Gaines's Chicago office; it "frequently" contacted Gaines's representatives in Chicago to handle customer disputes and discuss business.

Gaines characterizes Martin Brothers's 28 purchase orders as offers which Gaines accepted in Chicago; Gaines describes this lawsuit as based on breaches of 28 separate contracts that were formed in Illinois. Certainly, Gaines contends, this constitutes the transaction of business in Illinois. And if this is not enough, then simply add in the numerous communications between the parties and "[t]here is no question that Martin Brothers is subject to personal jurisdiction in Illinois * * *." Gaines's Response at 8.

With the exception of the characterization of the purchase orders as separate contracts, the parties agree on the facts; and both cite a string of cases in support of their positions; and both argue that these cases require decisions in their favor. We, however, consider it unnecessary to examine these cases in detail; suffice it to say that all are factually distinguishable from this case. These factual distinctions might not matter if our decision were guided by the existence of a rule. Rules attach definite legal consequences to areas of conduct which are clearly and sharply identified; they afford a judge little or no room for discretion in arriving at a decision. If a given set of facts falls within a rule's compass, the conclusion follows. Rules foster certainty, uniformity, and stability in the legal order and thus minimize the costs of litigation. *See, e.g.,* Schlag, *Rules and Standards,* 33 U.C.L.A.L.Rev. 379 (1985); Easterbrook, *Stability and Reliability in Judicial Decisions,* 73 Cornell L.Rev. 422, 423–24 (1988); R. Dworkin, *Taking Rights Seriously* 22–28 (1977). *But see* Coffin, *Judicial Balancing: The Protean Scales of Justice,* 63 N.Y.U.L.Rev. 16 (1988).

But our decision is not governed by a rule; rather, we must look to a standard composed of a number of factors which we must "weigh" and balance in order to determine whether Martin Brothers is amenable to jurisdiction under the long-arm. While standards in general and balancing tests in particular offer flexibility and indi-

---

**4.** This reading may be in some tension with the Illinois Supreme Court's observation that "an interpretation which renders the statute unconstitutional should be avoided, if possible." *Green,* 86 Ill.2d at 436, 56 Ill.Dec. at 660, 427 N.E.2d at 1206. Under *Sheba,* an unconstitutional interpretation of the long-arm is impossible because it is more restrictive than the Due Process Clause. In *Green* the court emphasized that the long-arm "should have a fixed meaning", as opposed to the "changing concepts of due process." *Id.* This suggests that the concept of due process could "evolve" to a point where it is narrower than the long-arm which, because fixed, does not adjust to meet the changing standards of due process. And this possibility explains why both *Cook* and *Green* require a two-step analysis (*first,* determine whether jurisdiction is proper under the long-arm; and *second,* whether exercising jurisdiction is consistent with due process) which would be unnecessary under *Sheba.*

vidualized decisionmaking, they are also indeterminate and therefore manipulable. This is particularly true where the factors comprising the test lack determinate weights. "Lacking the scale, no weighing—that is, *principled* weighing—is possible. What carries great weight with one judge is but a trifle to another. We are left with a recipe for little better than arbitrary ad hoc decisionmaking." *Ellis Corporation v. Hershfield*, No. 87 C 3096, slip op. at 9 (N.D.Ill. Jan. 11, 1988) (Zagel, J.) [available on WESTLAW, 1988 WL 2786] (emphasis in original). Factors can be assigned "weights" to reach any result; and the consequence of this plasticity is that the doctrine of precedent is sapped of its strength: every case can be distinguished from every other case, and the distinction can justify a different balance, and hence a different result. *See* Maltz, *The Nature of Precedent*, 66 N.C.L.Rev. 367, 377–78 (1988).

Where standards rather than rules pilot decisionmaking, we must make our decision with reference to the principle or principles that underlie the standard. Standards are guides only when considered in relation to the principles from which they derive; they allow the decision maker to tailor his decision according to a specified substantive objective. The principles or objectives undergirding the "transaction of business" section of the long-arm are fairness and consent. If a non-resident defendant transacts business in Illinois he enjoys the benefits and protections of Illinois law; and he should see that his activities might lead him to litigate in Illinois. And if litigation in Illinois is foreseeable and the non-resident goes ahead with the transaction, then it is fair to say that he has consented to litigating in Illinois. Consent implies voluntariness: it means "[v]oluntarily yielding the will to the proposition of another." *Black's Law Dictionary* 276 (5th ed. 1979). Absent a voluntary choice there can be no consent; and without consent there is no jurisdiction under the "transaction of business" section of the long-arm. These principles lead us to conclude that Martin Brothers is not subject to personal jurisdiction under the long-arm. True, Martin Brothers sent 28 purchase orders to Gaines's Chicago office; and true, the parties communicated extensively; Martin Brothers even sent a representative to Chicago to discuss its business relations with Gaines. Given these facts alone it seems reasonable to conclude that Martin Brothers did transact business in Illinois. After all, aren't these facts indicia that it was reasonably foreseeable to Martin Brothers that it might be sued in Illinois if anything went wrong? And therefore that it consented? Perhaps. But we have omitted two facts—the critical facts—from our picture: Martin Brothers' contacts with Illinois came only after it had entered into a contractual relationship with Gaines; and after Gaines unilaterally decided to move its offices from New York to Chicago.

As we noted at the outset, when the parties executed the distribution agreement on 9 April 1986 Gaines was a Delaware corporation with its principal place of business in New York. From an *ex ante* perspective, then, Martin Brothers should have foreseen that it might be forced to litigate in New York (or possibly Delaware), but not Illinois. Only *after* the parties entered into the distribution agreement did Gaines move its offices to Illinois; and Gaines did not (at least as far as we can tell) consult Martin Brothers about the move. Add to this the fact that Gaines instructed (or requested) Martin Brothers to send its purchase orders to Chicago and the appearance that Martin Brothers "voluntarily" transacted business in Illinois disappears. This explains, perhaps, why Gaines characterizes the 28 purchase orders as 28 separate contracts; for if each purchase order constitutes a separate contract, then Martin Brothers "voluntarily" entered into 28 agreements with an entity which it knew to be headquartered in Illinois; and surely *this* constitutes transacting business in Illinois. Once again, however, when we place the 28 purchase orders in their larger context a different picture emerges. Under the distribution agreement, Martin Brothers was obligated to use its best efforts to promote and sell Gaines's products in foreign markets. If, through such efforts,

Martin Brothers succeeded in securing a portion of the market, then it had to send purchase orders for the goods to Gaines; if, on the other hand, Martin Brothers did not use its best efforts, then it would be in material breach or default of the agreement.

In our view, then, Martin Brothers did not voluntarily decide whether to send purchase orders to Gaines in Chicago. All of Martin Brothers' "voluntary" contacts with Illinois can be traced to its pre-existing obligations under the distribution agreement. And fulfilling one's pre-existing legal duties on pain of breach is not "voluntary" for purposes of transacting business under the long-arm. Whether an action is voluntary must be measured *ex ante*, not *ex post*; and when Martin Brothers voluntarily chose to enter into the distribution agreement with Gaines, there was absolutely no indication that the battleground of litigation would be Illinois. Martin Brothers did not "transact business" in Illinois.

#### B

Gaines also argues that Martin Brothers is subject to jurisdiction in Illinois under the "doing business" doctrine. This doctrine, unlike the long-arm, confers jurisdiction over a non-resident corporation even for claims unrelated to the defendant's business activities in Illinois. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 735, 429 N.E.2d 847, 852 (1981). The term "doing business" means that the defendant is conducting business "with a fair measure of permanence and continuity." *Id.*, quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 ((1917) (Cardozo, C.J.). Not so here.

While jurisdiction under the long-arm and the "doing business" doctrine are logically distinct concepts, we think it is clear that if a corporation's total contacts with Illinois do not amount to the transaction of business for purposes of the long-arm, it necessarily follows that those contacts do not confer jurisdiction under the "doing business" doctrine which requires much more than a single business transaction.

### III

Martin Brothers is not amenable to jurisdiction in Illinois; therefore, its motion to dismiss for want of personal jurisdiction is GRANTED.