ACRISON, INC., Plaintiff,

v.

CONTROL AND METERING LIMITED,
et al., Defendants.

No. 89 C 541.

United States District Court,
N.D. Illinois, E.D.

Jan. 25, 1990.

Mark T. Banner, Grantland G. Drutchas, Allegretti & Witcoff, Ltd., Chicago, Ill., Charles Bradley, Peter Bucci, Bradford Breen, Davis, Hoxie, Faithfull & Hapgood, and James D. Fornari, Jarblum, Solomon & Fornari, P.C., New York City, for plaintiff.

Robert Harmon, Rodney Daniel, William, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Stephen G. Rudisill, Arnold, White & Durkee, Chicago, Ill., and Willem G. Schuurman, Arnold, White & Durkee, Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Brabender Technologie KG ("Brabender") has moved for dismissal from this patent infringement action brought by Acrison, Inc. ("Acrison") against Brabender, its licensee Control and Metering Limited ("CML") and CML's subsidiary Control and Metering, Inc. ("CMI"). Of the three defendants, only CMI has an Illinois place of business, so that Brabender's amenability to suit here depends on the reach of the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, ¶ 2–209(a) ("Section 2–209(a)").[1] For the reasons stated in this memorandum opinion and order, Brabender's motion is granted.

### Facts [2]

Acrison challenges a Brabender gravimetric feeding system as an infringement of

---

1. Because the length of Section 2–209(a)'s arm cannot constitutionally extend beyond the reach of the Due Process Clause, this opinion will refer to the constitutional due process limitation on in personam jurisdiction over Brabender only for expository purposes.

2. This factual statement is substantially abridged—not because this Court has failed to consider any portion of what the parties submitted (of course that is not the case), but because much of what was tendered by Acrison was beside the mark or does not require detailed treatment. For example, Acrison sub-

an Acrison patent. Brabender, a German national, does not do business directly in the United States. Instead it entered into an exclusive distributorship agreement with CML in 1984,[3] which was converted to an exclusive ten-year license agreement for the same territory and on essentially the same substantive terms on April 1, 1987. Brabender did not agree to indemnify CML against claims of the type involved here, so that they are operating independently (and with separate counsel) in this action.

CML's manufacturing operation is in Canada. It buys components from Brabender F.O.B. Duisburg, Germany and ships them to its facilities in Canada where they are combined with components of other manufacturers to produce CML's weighing devices. CML markets those devices in North America. It has a United States subsidiary, CMI, with an established place of business in Batavia, Illinois.

Except for the sporadic provision of repair parts during the 1983–86 period to maintain a Brabender device sold to an Illinois company some time before 1983,[4] Brabender itself has never sold, solicited, advertised or shipped any products into Illinois. Brabender has never maintained any employees, agents, offices, telephone listings, property, bank accounts, subsidiaries or affiliates in the United States. Indeed, it has never provided assistance to

any end users in this country relating to installing, assembling, using or repairing Brabender equipment, nor has it ever extended any warranties or guaranties of its products to United States purchasers or users.

Although Brabender has thus been conspicuously absent from Illinois (and indeed from the entire United States) in terms of the direct active conduct of business—not only absent in terms of personnel but also in terms of its own shipment of products—certain of its people have from 1984 through 1989 attended the industry's annual trade show in Chicago (the Chicago Powder and Bulk Solids Show). CML's booth at those shows exhibited Brabender's products, but that was solely a CML activity. Not surprisingly, of course, Brabender's people who came to the show observed CML's booth and display[5]—and they also were interested in observing, and did observe, competitive equipment. On occasion during the trade shows, the Brabender people visited a few Illinois companies that had purchased CML equipment, but those visits were purely social or for the purpose of gathering information. No service or solicitation by Brabender was performed during the trade show visits.

### Absence of Personal Jurisdiction

Jurisdictional jurisprudence has long since moved away from the bright line pre-

---

mitted a two-inch-thick set of exhibit photocopies (including such things as the patent in suit and some documents that really do not bear on the issues), and its oversized memorandum inexplicably devoted something over three pages to a description of the technology involved in the patent—a total irrelevancy with or without the fact that the parties had previously *stipulated* that solely for purposes of Brabender's motion to dismiss, the literal infringement of the Acrison patent in suit was undisputed. These items are only exemplary, and the factual statement that follows in the text fairly sets out the relevant considerations on the issue of personal jurisdiction.

3. Although the agreement was captioned "Principal Agent Agreement," it did not at all establish the kind of relationship that American law treats as attributing to the principal all the agent's actions within a broad scope of agency. Instead CML was granted an exclusive distributorship of Brabender's products covering the United States and Canada, with CML buying

Brabender's manufactured goods, selling them at CML's own prices, in its own name and for its own account. Brabender agreed to provide CML with support for the latter's activities, but Agreement § 3 made plain the independent status of the distributor implicit throughout the agreement's substantive provisions:

> The agent is not authorized to perform any legal transactions on behalf or in the name or for account of the manufacturer or to collect any payments in the name or for account of the manufacturer.

4. Even that device was sold to the local company by a European engineering firm, not by Brabender itself.

5. For what it's worth (really nothing in the totality of the circumstances here), one day during the 1986 trade show Acrison's Vice President Ronald Ricciardi saw Brabender's sales manager Alfred Hauptkorn operating a gravimetric feeder in the CML booth.

scribed by *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), in which the predicate for personal jurisdiction was simply physical power—the service of process on a defendant within the territorial boundaries of the forum. Although some movement from that simplistic approach began a good deal earlier than the decision in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that case—now nearly a half-century old—is generally perceived as first having announced the modern approach to the problem in due process terms. Since then the United States Supreme Court has been called upon to deal with the subject with some degree of frequency, each time adding refinements to the analysis—perhaps most significantly in recent years in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and most recently *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Although to this Court's knowledge the cases have not spoken in just these analytical terms, it has seemed to this Court that in at least the tort field (if not in others as well) a key development has been the engrafting of what are essentially in rem concepts to generate in personam liability. That is, the presence of a defendant's property in the forum has in some instances been enough to invoke jurisdiction not merely over that property—the familiar notion of in rem liability—but over its owner as well, to allow a judgment in personam. That has been the hallmark of such cases as *Gray v. American Radiator and Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961) (an Illinois Supreme Court decision that has found favor with the United States Supreme Court as a valid exercise of jurisdiction in due process

terms)—and it has been the benchmark against which both *World–Wide Volkswagen* and *Asahi* measured the requirements of due process but rejected in personam jurisdiction.

■ Essentially that is what is at issue here—whether Brabender, whose own personnel have not established any presence in Illinois except for their nonmaterial trade show attendance (to which this opinion will refer later), is subject to service of process and to a potential judgment in personam merely because its claimed infringing products were sold in Illinois under the auspices of CML, originally its exclusive distributor and now its exclusive licensee for the United States and Canada. And because this case is governed by the version of the Illinois long-arm statute that preceded the September 1, 1989 amendment to Section 2–209(a), that statute and the Illinois state law decisions interpreting it (rather than the full reach of the Due Process Clause) are at issue here. In relevant part Section 2–209(a) provides:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

\* \* \* \* \* \*

(2) The commission of a tortious act within this State.

Acrison's strongest position stems from its invocation of a 15–year–old decision from our Court of Appeals in a startlingly similar case, *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975). Except in one critical respect dealt with hereafter, *Honeywell* is so similar to this case that the factual descriptions there and here might almost have been written by the same pen.[6] Under the circumstances it is

---

**6.** One difference not discussed in this opinion is that the foreign defendant in *Honeywell* had agreed to indemnify its United States distributor against patent infringement claims, while Bra-

bender has not thus insulated CML or CMI. In light of the result reached here, this Court need not decide whether that distinction might be outcome-determinative.

surprising that although Brabender's counsel were well aware of *Honeywell*—they cited it at their Mem. 4 n. 1 only for the unexceptionable proposition that the operative principles at issue in this case are in part questions of due process—they made no effort to distinguish the case in their opening submission. Their R.Mem. 11–12 attempted some distinctions, not altogether successfully.

This Court has serious misgivings as to the current force to be ascribed to *Honeywell*, which was a split decision reversing then District Judge (now Chief Judge of the Court of Appeals) William Bauer, who had held that the activities of a German company quite comparable to those of Brabender here did not subject the defendant to jurisdiction under the "commission of a tortious act" provision of the Illinois long-arm statute. But this Court's place in the judicial hierarchy requires it still to adhere to *Honeywell* unless a departure is clearly signified by later developments from a Supreme Court (either the United States Supreme Court or the Illinois Supreme Court), or of course from the Court of Appeals itself. Brabender urges that *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290 (3d Cir.1985), a case given partial approval in *Asahi* (480 U.S. at 112, 113 n. *, 107 S.Ct. at 1033 n. *), calls for such a disavowal of *Honeywell*. That would really be a major step, the product of building an inference on an inference—but that step need not be considered in light of a dispositive reason that neither party has really spoken to.

It will be recalled that the source of jurisdiction under Section 2–209(a)(2) is the "commission of a tortious act *within this State*" (emphasis added). Familiar jurisprudence teaches that in tort law the key operative factors for determining the locus of the tort and the defendant's amenability to suit at that locus are normally the place where plaintiff sustained its *injury* and the relationship (or lack of relationship) of the foreign defendant to that place—that is the lesson of *Gray*, of *World–Wide Volkswagen*, of *Asahi* and, yes, of *Honeywell*

itself. True enough, some Illinois cases applying the long-arm statute have said that it is not sufficient to ground personal jurisdiction here on a plaintiff's mere sustaining of adverse economic impact in Illinois (*Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981) and *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 95 Ill.Dec. 496, 489 N.E.2d 1360 (1986)). But in a startling instance of serendipity, our Court of Appeals has just two weeks ago construed the selfsame Illinois statute and has found this Court's decision in *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341 (N.D.Ill.1984) "provides better guidance" than the two just-cited Illinois Supreme Court decisions, at least where the defendant's tortious activities were *intended* to affect the plaintiff's financial interests in Illinois (see *FMC Corp. v. Varonos*, 892 F.2d 1308, 1312–13 (7th Cir.1990)). As already indicated, that latter test was plainly met in *Honeywell*. Defendant there purposefully engaged in activities similar to those of Brabender here, but it did so *intending* an impact *in this state* on Honeywell, an *Illinois*-based company. By contrast, Acrison neither resides nor does business in Illinois at all—it has chosen this Illinois forum only because CMI, a subsidiary of Brabender's licensee CML, has an established place of business in this district.

Acrison cannot then draw comfort from *Honeywell* despite the other factual parallels that case presents. Tort cases such as *Gray*, *World–Wide Volkswagen* and *Asahi* all dealt with personal injuries sustained in the forum state. This case involves injury to intellectual property—a patent. Damage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the *owner* suffers the damage.[7] Where as here the claimed tortious activity—the sale of claimed infringing goods by Brabender's licensee or the licensee's subsidiary—is the only Illinois-based event but it has its economic impact on Acrison *outside* of Illinois, there is no reason to believe that the Illi-

---

7. This situation is somewhat related, though the analogy is of course not a perfect one, to tortious injuries to personality—such as libel, slander or invasion of privacy.

nois courts would view *that* situation as coming within the reach of the long-arm statute. *Honeywell* teaches nothing different—indeed in that case the injury to an Illinois corporation was a focal point of the decision (509 F.2d at 1144):

> Moreover, by entering into the exclusive agreement for distribution in the United States, Metz purposely promoted American sales and ensured that such infringement would take place, causing injury to Honeywell, a corporation with its principal place of business in Illinois.

\* \* \* \* \* \*

Direct contact with the forum state is not essential to the exercise of personal jurisdiction. Metz may not have physically entered the state of Illinois, but it placed its flash devices in the stream of commerce under such circumstances that it should reasonably have anticipated that injury through infringement would occur there.

■ Accordingly Brabender's motion must be granted because the service of process here did not meet the standards of the long-arm statute—unless Brabender's own visits to the annual Chicago trade shows were to qualify under another branch of that statute, Section 2–209(a)(1) ("The transaction of any business within this State"). On that score a negative answer is dictated both by *McKnelly v. Whiteco Hospitality Corp.*, 131 Ill.App.3d 338, 341–42, 86 Ill.Dec. 613, 615–16, 475 N.E.2d 992, 994–95 (1st Dist.1985) and by the common-sense meaning of the statutory doing-business provision. *McKnelly* teaches that (1) comparable attendance at trade shows does not meet the Section 2–209(a)(1) statutory test and (2) even if it did, the cause of action must still arise from that particular "transaction of business" in order to subject the defendant to personal jurisdiction.

That latter situation was plainly not the case here.

#### Conclusion

Accordingly Brabender's motion under Rule 12(b)(2) is granted. It is dismissed as a defendant.[8]

---

8. Brabender's R. Mem. 14 made this offer in response to Acrison's claim that the burden to Brabender in defending a lawsuit in a foreign country is outweighed by Acrison's burden of obtaining a third party subpoena to obtain certain information from Brabender:

> If Acrison withdraws its opposition to this motion and permits dismissal of Brabender,

Brabender will voluntarily provide Acrison with the information on a confidential basis. Even though the dismissal here has been the result of this Court's ruling and not Acrison's voluntary surrender, this Court expects Brabender to honor its offer.