Nashua v. Shores                          CV-95-177-M    07/31/95

UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Nashua Corporation,
      Plaintiff,

      v.                                      Civil No. 95-177-M

Andrew Shores,
      Defendant.


                              O R D E R


      Nashua Corporation ("Nashua"), a company incorporated in

Delaware with a principal place of business in Nashua, New

Hampshire, brings this diversity claim alleging, inter alia,

breach of contract and misappropriation of trade secrets.

Defendant Andrew Shores ("Shores"), a former employee of Nashua,

is a resident of California.  Shores has filed a motion to

dismiss, arguing that this court lacks personal jurisdiction over

him.  In the alternative, Shores moves for a venue transfer to

the Central District of California.  As explained below, Shores'

motions are denied.



                    I.  FACTUAL BACKGROUND

      This case arises out an alleged breach of two employment

contracts entered into by the parties more than twenty years ago.

In early 1974, Nashua acquired the tape division of Norton Company, which was located in Watervliet, New York.  At that time Shores was employed by Norton as a research associate and lived in Schenectady, New York.  Shores became an employee of Nashua upon the acquisition of the Norton Tape Division.

As a condition of continued employment with Nashua, Shores signed agreements in which he promised to forever maintain Nashua's (and Norton's) trade secrets and to assign to Nashua all of his discoveries and inventions.  Shores continued to work for Nashua in New York, until late February 1975, when he resigned. He subsequently lived and was employed in New Rochelle, New York, and St. Louis, Missouri, before moving to California in 1979. Shores has resided and been employed in California ever since.

Nashua alleges that in 1992, Shores obtained a United States patent on technology he had originally developed as an employee of Nashua, thereby breaching the employment contracts he signed.[1]

---

[1]  The technology relates to chemical "release agents" which are applied to the backing of adhesive tape, labels, or other adhesive products to facilitate their being unwound or unstuck.

## II.   PERSONAL JURISDICTION

### A.   STANDARD OF REVIEW

In diversity jurisdiction cases, personal jurisdiction over a non-resident defendant is governed, at least in part, by the forum state's long-arm statute. _Goldman, Antonetti, Ferraiuoli, Axtmayer and Hertell, Partnership v. Medfit Int'l, Inc._, 982 F.2d 686, 690 (1st Cir. 1993). When personal jurisdiction is contested, the burden is placed on the plaintiff to demonstrate that the court has such jurisdiction. _Kowalski v. Doherty, Wallace, Pillsbury and Murphy, Attorneys at Law_, 787 F.2d 7, 8 (1st Cir. 1986).

Jurisdictional facts are construed in the plaintiff's favor, _Buckley v. Bourdon_, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a _prima_ _facie_ showing that jurisdiction exists.[2] _Kowalski_, 787

---

[2] Shores asserts that the court should require Nashua to establish jurisdictional facts not by the traditional _prima_ _facia_ showing, but by a preponderance of the evidence. _Boit v. Gar-tec Products, Inc._, 967 F,2d 671, 675-76 (1st Cir. 1992). However, as the First Circuit recently noted in _Foster-Miller, Inc. v. Babcock & Wilcox Can._, 46 F.3d 138 (1st Cir. 1995), a heightened standard is most appropriate in cases which feature "conflicting versions of the facts." _Id_. at 145. This is not such a case. As the parties stated during the hearing, there is no real

F.2d at 8.  Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based upon specific facts set forth in the record in order to defeat a defendant's motion to dismiss. And, "[i]n reviewing the record before it a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgement.'"  VDI Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H. 1991)(quoting Lex Computer and Management Corp. v. Eslinger & Pelton, P.C., 676 F.Supp. 399, 402 (D.N.H. 1987)).

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state).  Kowalski, 787 F.2d at 9-10.  New Hampshire's applicable long-arm statute, N.H. RSA 510:4, "provides jurisdiction over foreign defendants to the full extent that the statutory language

dispute regarding the facts relevant to personal jurisdiction.

4

and due process will allow." Estate of Mullen by Mullen v. Glick, 1994 U.S. Dist. Lexis 16020 at *5 (D.N.H. November 3, 1994) (quoting Phelps v. Kingston, 130 N.H. 166, 177 (1987)).

Accordingly, the court's "proper inquiry ... focuses on whether jurisdiction comports with federal constitutional guarantees." Mullen, supra, at *6; see also McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994). Before a court can exercise jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)(citations omitted). Before finding that a defendant has such "minimum contacts," a court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum State" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Electrical, etc. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Nashua does not contend that Shores has engaged in "continuous and systematic" activity in New Hampshire such as would give rise to general personal jurisdiction. Accordingly, if the court may properly exercise personal jurisdiction over Shores, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum based contacts. United Electrical, 960 F.2d at 1088-89. In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the court of appeals has formulated a three-part test:

> First, the claim underlying the litigation
> must directly arise out of, or relate to, the
> defendant's forum-state activities. Second,
> the defendant's in-state contacts must
> represent a purposeful availment of the

6

> privilege of conducting activities in the
> forum state, thereby invoking the benefits
> and protections of that state's laws and
> making the defendant's involuntary presence
> before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in
> light of the Gestalt factors, be reasonable.

United Electrical, 960 F.2d at 1089.

## B. DISCUSSION

1. Relatedness

"[T]he relatedness test is, relatively speaking, a flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). In explaining the application of the "relatedness" prong of the test, the Court of Appeals has:

> suggested an analogy between the relatedness
> requirement and the binary concept of
> causation in tort law under which both
> elements - cause in fact (i.e., the injury
> would not have occurred "but for" the
> defendant's forum-state activity) and legal
> cause (i.e., the defendant's in-state conduct
> gave birth to the cause of action) - must be
> satisfied to . . . support specific
> jurisdiction.

United Electrical, 960 F.2d at 1089.

Nashua alleges Shores had the following contacts with New Hampshire: 1) he travelled to New Hampshire once at the start of his employment to tour Nashua's facilities, at least three times

7

during his tenure to discuss his research and development activities, and finally to tender his resignation; 2) he voluntarily signed two employment agreements with Nashua, one of which was executed in New Hampshire; 3) he was paid from New Hampshire using checks drawn on New Hampshire banks; and 4) he regularly contacted his supervisor both by phone and in writing at Nashua's headquarters in New Hampshire in order to discuss his research.

It is clear that defendant's contacts with New Hampshire are closely related to Nashua's legal claims. The gravamen of Nashua's complaint sounds in contract. Shores' contacts with New Hampshire all flow from, or impact on, his employment contracts. As such, "the very document that represents [Shores'] forum-related activity . . . comprises the source and substance of, and is thus related to," Nashua's claims against him. Pritzker, 42 F.3d at 61. Put simply, but for the contract, there would not have been contact with this forum nor cause for this suit.

To the extent Nashua's claims are based in tort, the relatedness prong may be satisfied where it is foreseeable that the tort's resultant harm will be felt in the forum state. VDI

Technologies, 781 F.Supp. at 92; see also Phelps v. Kingston, 130 N.H. 166, 172 (1987) ("even where the litigation does not `arise out of or relate to' forum contacts, those contacts directed at New Hampshire citizens may satisfy due process for jurisdictional purposes provided they are substantial.")  Here, as more fully discussed below, there can be no doubt that the intentionally harmful acts allegedly committed against Nashua would be most seriously felt in New Hampshire.  Accordingly, the court finds the element of relatedness to be satisfied.

2.  Purposeful Availment

    To satisfy the "purposeful availment" prong of the jurisdictional test, Nashua must show that Shores' contacts constitute "`a purposeful availment of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the New Hampshire] court foreseeable.'"  Pritzker, 42 F.3d at 61 (quoting United Electrical, 960 F.2d at  1089).  The court is satisfied that Shores purposely availed himself of the privilege of conducting activities in New Hampshire and, therefore, submitted himself to the jurisdiction of this court.

9

It is well settled that the entry into even a single contract with a resident of the forum state can support jurisdiction.  See McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."); Burger King, 471 U.S. at 476 n.18 ("even a single act can support jurisdiction").  In Burger King, the Supreme Court held that a Florida court could properly exercise jurisdiction over a Michigan resident in a breach of contract action, even though the defendant's only contacts with Florida were contractual in nature.  The court stated that "where individuals `purposefully derive benefit' from their interstate activities . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."  Id. at 473-475 (quoting Kulko v. California Superior Court, 436 U.S. 84, 96 (1978)); see also Pritzker, 42 F.3d at 62 ("the jurisprudence of minimum contacts casts a wide net, and a nonresident defendant may not always be able to elude the net by such simple expedients

as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction").

Nashua asserts that Shores voluntarily entered into employment contracts with it, knowing its corporate headquarters were in New Hampshire. He executed at least one of the contracts in New Hampshire. Payroll checks issued in performance of the employment contract were issued in New Hampshire and drawn on New Hampshire banks. He travelled to New Hampshire in the normal course of his own performance under the contract. A supervisor travelled from New Hampshire to New York on a weekly basis in order to meet with Shores and discuss his work. Finally, Shores had frequent written and telephone contact with his superiors in New Hampshire. Taken together, these factors support finding that Shores purposefully availed himself of the privilege of conducting activities in New Hampshire such that his subsequent involuntary presence before a court in this jurisdiction in connection with those activities was reasonably foreseeable.

Moreover, Shores' alleged intentional breach of contract and intentionally tortious activity also constitute purposeful availment. The constitutional requirements of personal

11

jurisdiction may be satisfied when "it [is] reasonably foreseeable that the consequences of the defendant's out-of-state activities would manifest themselves in the forum." Phelps, 130 N.H. at 172-73; see also, Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989) cert. denied, McNell v. Hugel, 494 U.S. 1079 (1990) ("knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact"); Concord Labs, Inc. v. Ballard Medical Products, 701 F. Supp. 272, 276 (D.N.H. 1988) (jurisdiction proper in New Hampshire "since the brunt of the harm would be felt in New Hampshire at the plaintiff's principal place of business").

Here, it was certainly foreseeable to Shores that no matter where he breached his employment contract or committed the intentional tort of conversion of Nashua's intellectual property, the major harm would be felt in New Hampshire at Nashua's principal place of business. First, Nashua would obviously suffer economic harm most acutely at its principal place of business in New Hampshire. But, more significantly, when Shores obtained a patent on what Nashua alleges to be its own technology, he prevented Nashua from exercising, in New Hampshire and elsewhere, the essential right of a patent holder — the

12

right to exclude others from using the patented technology. Finally, it should be noted by analogy that many courts, when determining the place of injury in patent infringement suits, have concluded that the legal situs of the injury is the principal place of business of the legal owner. See e.g., Honeywell v. Metz Apparatewerke, 509 F.2d 1137, 1142 (7th Cir. 1975) (injury from infringement occurred at patent owner's principal place of business); Acrison, Inc. v. Control and Metering Ltd., 730 F.Supp. 1445, 1448 (N.D. Ill. 1990) (same); but see, Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 (Fed. Cir. 1994) (injury occurs at place where infringing sale is made). The same principle should be applicable here, where Nashua claims to have been deprived of its property rights, including patent rights, by one who unlawfully obtained a patent.

In sum, Shores, through both his contracting with a New Hampshire company and his allegedly intentional breach of contract and tortious activity directed at a resident of New Hampshire, has purposely submitted himself to the jurisdiction of this court.

13

3.  Gestalt Factors

     The "Gestalt" factors, which make up the third element in the specific jurisdiction analysis, are:

> [T]he plaintiff's interest in obtaining
> convenient and effective relief; the burden
> imposed upon the defendant by requiring it to
> appear; the forum's adjudicatory interest;
> the interstate judicial system's interest in
> the place of adjudication; and the common
> interest of all affected sovereigns, state
> and federal, in promoting substantive social
> policies.

Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (citations omitted).  The burden is imposed on the defendant to establish the unreasonableness of the forum.  Snow v. American Morgan Horse Assoc., Inc., 1989 WL 508485 (D.N.H.). Here, an examination of the Gestalt factors weighs heavily in favor of exercising personal jurisdiction over Shores.  Since its principal place of business is in New Hampshire, Nashua has a strong interest in litigating the case here.  Although Shores will be required to travel from California to New Hampshire for the trial, the distance "creates no especially ponderous burden for business travelers."  Pritzker, 42 F.3d at 64 (discussing travel from New York to Puerto Rico); see also VDI Technologies, 781 F.Supp. at 90-92 (California to New Hampshire).  Also,

14

because the complaint alleges serious harm to a New Hampshire resident, the state has a substantial interest in the resolution of the dispute.  See e.g., Keeton v. Hustler Magazine Inc., 465 U.S. 770, 776 (1984) ("[I]t is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State").  Finally, no other forum has a greater interest in deciding this case.  Accordingly, the court finds that the Gestalt factors also support the exercise of in personam jurisdiction over defendant.

Accordingly, Shore's motion to dismiss for lack of in personam jurisdiction is necessarily denied as the exercise of in personam jurisdiction over him is consistent with both the applicable statute and constitutional due process requirements.

III.  VENUE

Shores also moves, pursuant to 28 U.S.C. 1404(a), to transfer this case to the United States District Court for the Central District of California.  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district where it might have been brought.

15

This litigation might have been brought in the Central District of California. That court may exercise subject matter jurisdiction on diversity grounds (plaintiff is a resident of New Hampshire, the defendant resides in California, and the amount in controversy exceeds $50,000). 28 U.S.C. 1332(a).

Authority to transfer a case pursuant to 28 U.S.C. 1404(a) is committed to the court's broad discretion. United States ex rel. La Valley v. First Nat'l. Bank, 625 F.Supp. 591, 594 (D.N.H. 1985). When considering a motion to transfer under Section 1404(a), the court will consider such factors as the "convenience of the parties and witnesses and the availability of documents needed for evidence." Buckley v. McGraw-Hill, Inc., 762 F.Supp. 430, 439 (D.N.H. 1991). Shores bears the burden of demonstrating that these factors weigh in favor of transfer. Id. "[T]he Supreme Court has held that `[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Applying this standard, transfer is not warranted here. First, although it certainly would be more convenient for Shores

16

to litigate this matter closer to his home, "[t]ransfer is inappropriate if the effect is merely to shift inconvenience from one party to the other." Buckley, 762 F.Supp. at 439 (citations omitted); see also Crosfield Hastech, Inc. v. Harris Corp., 672 F.Supp. 580, 589 (D.N.H. 1987) (in order to justify transfer, the balance of conveniences must strongly favor moving party). Moreover, the convenience of the witnesses is the most significant factor to be considered in Section 1404(a) analysis. Buckley, 762 F.Supp. at 440. Here, the plaintiff has demonstrated that all of the witnesses so far identified, with the exception of Shores, live on the east coast. The majority live in New Hampshire. Shores argues that he will call several as yet unidentified witness, all of whom live in California. However, "amorphous allegations of need as to unnamed witnesses . . . are inadequate to satisfy" his burden. Crosfield Hastech, 672 F.Supp. at 589.

Finally, the "interests of justice," Gulf Oil Corp., 330 U.S. at 508, do not mandate transfer of this matter. Nashua's principal place of business is in New Hampshire, the majority of the witnesses are in New Hampshire, the injury, if any, was keenly felt here, and Shores is properly subject to suit in New

17

Hampshire.  In the final analysis, this case belongs in New

Hampshire.  Accordingly, the defendant's motion for transfer is

also denied.


IV.  <u>CONCLUSION</u>

For the foregoing reasons, Shores' motion to dismiss and

alternate motion for transfer of venue (document no. 5) are both

denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge


July 31, 1995

cc:  Bruce W. Felmly, Esq.
     Brian E. Pastuszenski, Esq.
     Peter S. Cowan, Esq.
     Robert Strauss, Esq.

18