UNITED STATES of America

v.

Jason LIGON.

Crim. No. 90–0419 (OG).

United States District Court,
District of Columbia.

Nov. 6, 1991.

As Amended Feb. 14, 1992.

Andrew Klingenstein, Asst. U.S. Atty., Washington, D.C., for U.S.

Elmer Douglass Ellis, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

On the 5th of August, 1991, the defendant, Jason Ligon, moved to dismiss his indictment for possession with intent to distribute 50 grams or more of a controlled substance on the ground that retrial is barred by the fifth amendment to the United States Constitution which provides, in part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2.

### Factual Background

The defendant was arrested on September 17, 1990, after he was found at the Greyhound Bus Station here in Washington with approximately 89 grams of "crack" cocaine in his trousers. He was later charged by a federal grand jury with possession with intent to distribute 50 grams or more of a mixture and substance containing cocaine base, in violation of Title 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii).

On April 24, 1991, the defendant was tried before Judge June Green. After a three-day trial ("Trial 1"), the jury was unable to reach a unanimous verdict. The Court declared a mistrial and the jury was discharged.

On June 11, 1991 the defendant was tried again before Judge Gasch. After three and one-half days of trial ("Trial 2"), the jury was charged on Friday afternoon, June 14, 1991, and instructed to return to commence deliberations on Monday, June 17, 1991.

The jury started deliberating at about 10:00 a.m. on June 17th and continued until 4:35 p.m. Six notes were sent out to the judge. Three of the notes asked substantive questions about the case. The first, at 10:15 a.m., asked for a transcript of the trial. The second note was sent out at 10:56 a.m. which asked: 1) for the identity of the senior officer on duty during the defendant's arrest and 2) what constitutes illegal search and seizure. The Court instructed in response to this second note at 1:15 p.m. and the jury continued its deliberations at 1:30 p.m. The third note requested an instruction on an inconsistency between the evidence presented and the evidence contained in a preliminary hearing transcript. The Court responded by reading the instruction on inconsistent testimony and credibility of witnesses. The jury continued deliberating at 2:45 p.m.

The record does not reflect precisely when the final note was sent out or received by the Court. It read: "The jury is unable to reach a decision (unanimous)."

Thereupon, the jury was called into open court at 4:35 p.m. at which time the Court engaged in a colloquy with the foreperson as follows:

THE COURT: I understand that the jury has been unable to reach a unanimous verdict. Is that still the picture?

JURY FOREPERSON: [Standing] Yes.

THE COURT: Do you think that any further deliberations would be helpful?

JURY FOREPERSON: No.

THE COURT: It is with regret the Court will declare a mistrial and discharge the jury.

Transcript of Proceedings before Judge Oliver Gasch, dated June 17, 1991, transcribed by Vernell A. Marshall, 8–9.

After announcing that a mistrial would be declared, at the request of defense counsel the Court addressed the issue of whether respective counsel would be permitted to interview the jury. *Id.* at 9. The Court then discharged the jury. At no time during the events stated did the defendant object to the declaration of a mistrial or to the discharge of the jury. Defense counsel moved that defendant be released on bond pending retrial. This motion was denied. The Court sought to ascertain the availability of counsel for retrial. Counsel were not available until August.

The case was reassigned to Judge Flannery for trial on August 5th whereupon this motion was filed. It was then reassigned to Judge Gasch for a decision on this motion.

### Discussion

Coercion of the jury is a matter that is the concern of every trial judge. This Court well recalls the *en banc* decision in *United States v. Thomas*, 449 F.2d 1177, 146 U.S.App.D.C. 101 (D.C.Cir.1971). In *Thomas*, convictions for assault with a dangerous weapon and robbery were reversed by the Court of Appeals in part because of what the trial judge had said to the jury late in the day after only one hour of deliberation and a note saying that they could not "come to an agreement." Over the defendant's objection, the Court made it known, outside the jury's hearing, that a mistrial was not going to be declared. The Court then said to the jury:

THE COURT: Mister foreman, the Court has your note and has read its contents to counsel and the defendant and has decided to excuse the jury at this time. I am not going to declare a mistrial, and thereby require a retrial of this case before some other jury. What I am going to do is to ask you, members of the jury, to break off your consideration of the case at this time. Don't discuss the case among yourselves, don't talk to anybody

else about it, and don't let anybody talk to you about it, but come back tomorrow morning at 9:30 with a fresh mind and a night's sleep and seek to reach a verdict about the matter one way or the other.

I am sure you ladies and gentlemen know we have a substantial backlog of work, and to spend another day before another jury retrying this case just doesn't make sense to me. See if you can't decide and come to a verdict, think about it overnight individually....

*Id.* at 1180 n. 11, 146 U.S.App.D.C. at 104, n. 11.

If such a well-intentioned instruction was held to be coercive, naturally trial judges are going to be less inclined to encourage juries to reach an agreement. The obvious difficulty with the mistrial is that an accused has an interest in being tried by a particular tribunal. *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), and *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). And so it is with this motion that this important interest needs to be balanced with the interest of public justice in a prompt and just disposition of the case.

For more than 160 years it has been well settled that a trial judge should not terminate a trial prior to obtaining a verdict unless there is a "manifest necessity" to do so. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). The failure of a jury to reach a verdict is equally well settled as the paradigmatic example of what constitutes "manifest necessity." *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982).

Justice Story wrote in *Perez* the oft-quoted statement as follows:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez*, 9 Wheat. at 580. Justice Rehnquist, in *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), characterized this formulation thus:

This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court.

*Id.* at 462, 93 S.Ct. at 1069.

Defendant argues that the Court in Trial 2 prematurely and *sua sponte* discharged the jury and declared a mistrial thereby depriving the defendant of his "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837. It is noted that *Wade* was tried by court-martial. Before the first trial was concluded, the 3d Army to which the defendant and members of the Court-Martial were attached had advanced well beyond the point where the court was sitting. In view of this circumstance, the commanding general transferred the case to the 15th Army, which was in a better position to try the case. There was also the question of access of witnesses to the Court. A plea of double jeopardy was interposed but denied. The conviction

was affirmed. Actually, *Wade* is a good example of the principle of manifest necessity enunciated in *Perez*. This right to have a trial completed by a particular tribunal is protected by the fifth amendment's double jeopardy clause. The *Wade* court said:

> The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

*Wade v. Hunter*, 336 U.S. at 688–69, 69 S.Ct. at 837 (citation omitted).

Justice Rehnquist, speaking for the Court in *Illinois v. Somerville*, pointed out that *Perez* dealt with the most common form of manifest necessity: a mistrial declared by the judge following the jury's determination that it was unable to reach a verdict. The Court then quoted from *Gori v. United States,* as follows:

> "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment."

*Illinois v. Somerville*, 410 U.S. at 462, 93 S.Ct. at 1069 (quoting *Gori v. United States*, 367 U.S. at 368, 81 S.Ct. at 1526).

In *Oregon v. Kennedy*, the court pointed out that the double jeopardy clause does not guarantee to the defendant that the state will vindicate its societal interest in the enforcement of the criminal law in one proceeding. In that case, the Oregon court held that retrial was prohibited because of the prosecutor's conduct, which it characterized as "overreaching." In examining a witness, the prosecutor asked whether the witness' reason for not doing business with the defendant was because he was a "crook." Thereupon, the defense moved for a mistrial, which was granted. The Supreme Court reversed.

> Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Oregon v. Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089.

Here, there is no intimation of prosecutorial "overreaching" which leads us to a consideration of the plurality case on which the defendant principally relies, *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

The trial judge in *Jorn* was Judge Ritter. Defendant was charged with 25 counts of violating Internal Revenue laws (26 U.S.C. § 7206(2)). Fourteen of these counts were dismissed by the government at the start of the trial. Five of the government's witnesses were taxpayers whose returns the defendant had allegedly prepared. When the first of these witnesses was called, the judge inquired whether he had been warned of his rights. The witness indicated that he had, but Judge Ritter exten-

sively warned the witness and then suggested that he should consult his own attorney. Other similarly situated taxpayer witnesses were given the same directive. After calling the witnesses into court and informing them of their constitutional rights and of the dangers of unwittingly making damaging admissions, the judge discharged the jury, *sua sponte*, and declared a mistrial. The trial judge's actions in *Jorn* were characterized by the Supreme Court as irrational and irresponsible in *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978) (Stevens, J.). Justice Rehnquist, in *Illinois v. Somerville*, cast further doubt on the actions of Judge Ritter, as well as the efficacy of the Court's plurality opinion in *Jorn*:

> Our decision in *Jorn*, relied upon by the court below and respondent, does not support the opposite conclusion. While it is possible to excise various portions of the plurality opinion to support the result reached below, divorcing the language from the facts of the case serves only to distort its holdings. That opinion dealt with action by a trial judge that can fairly be described as erratic. The Court held that the lack of apparent harm to the defendant from the declaration of a mistrial did not itself justify the mistrial, and concluded that there was no "manifest necessity" for the mistrial, as opposed to less drastic alternatives. The Court emphasized that the absence of any manifest need for the mistrial had deprived the defendant of his right to proceed before the first jury, but it did not hold that that right may never be forced to yield, as in this case, to "the public's interest in fair trials designed to end in just judgments."

*Illinois v. Somerville*, 410 U.S. at 469–70, 93 S.Ct. at 1073.

The government took a direct appeal to the Supreme Court. Justice Harlan discussed *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), and *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), where a variation of the *Perez* principle of manifest necessity was considered and focused on which party was to be the beneficiary of the mistrial ruling. There the judge had granted *sua sponte* a mistrial when it appeared that the prosecutor's questioning of a witness might lead to evidence of prior crimes. The Supreme Court held that this was not a bar to reprosecution because there was no abuse of discretion and the defendant was in all likelihood the beneficiary. Although the government sought to rely upon the principles enunciated in *Gori*, the Court characterized the benefits theory as pure speculation. The Court, speaking through Justice Harlan, in *Jorn*, decided that reprosecution after a *sua sponte* judicial mistrial declaration would deprive the defendant of his option to have the first jury acquit him.

After adjournment, in the case before this Court, the Court was informed by members of the jury that their vote at the time of the Court's mistrial declaration was 10 to 2 for conviction. It thus appears that the likelihood of acquittal was minimal.

The other interest to balance is the risk that an unjust or coerced verdict will be rendered after protracted and exhausting deliberations by the jury as a result of pressure from the Court to continue deliberating. *Arizona v. Washington*, 434 U.S. at 509–10, 98 S.Ct. at 832–33.

While it is true in the instant case that the trial judge did not engage in discussions with respective counsel prior to declaring a mistrial, and that it was declared by him acting on his own motion, there is a pronounced dissimilarity between this case and the cases cited by defendant where the judge took summary actions which were held to bar retrial. *See, e.g., United States v. Lansdown*, 460 F.2d 164 (4th Cir.1972) (retrial barred where trial judge declared mistrial despite foreman's statement that jury was "on the verge" of a verdict). In the case at bar, the jury had sent out a note to the judge saying that they were unable to reach a unanimous decision. Furthermore, the Court engaged in a colloquy with the foreperson of the jury in open court and on the record with all counsel present concerning whether further delib-

eration would be helpful. The foreperson's answer was an unequivocal "No."

The only case in our Court of Appeals to which counsel have referred is *United States v. Glover*, 731 F.2d 41 (D.C.Cir. 1984). Glover was indicted on charges of possession with intent to distribute cocaine and possession of a prohibited weapon (blackjack). The jury sent the court three separate notes asking various evidentiary questions and finally, at about 3:40 p.m., sent a fourth note saying, "We cannot reach a unanimous decision, so please advise." The judge read the *Thomas* rule pertaining to deadlocks to the jury and asked them to continue deliberations. On the following morning, the jury requested the rereading of instructions on the definition of evidence, reasonable doubt, common sense, facts, and the duties and responsibilities of the jurors. The Court also read a second time the *Thomas* instruction on a deadlocked jury. Defense counsel requested that the instruction on credibility be read. The Court declined to give this instruction and told the jury to continue deliberating. When they subsequently stated that they were irretrievably deadlocked, the judge declared a mistrial. The defense filed a motion to prohibit retrial and to dismiss the indictment on double jeopardy grounds. When this was denied, an appeal was filed under 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

The government sought a summary affirmance on appeal. A per curiam opinion was filed by Judges Wilkey and McGowan. Judge Mikva dissented.

It will readily be seen that there is a similarity between *Glover* and the instant case. The court's opinion considered the same cases from the Supreme Court that have been discussed in this memorandum and arrived at the same conclusion, that the trial court was justified in declaring a mistrial and denying the motion to dismiss the indictment on double jeopardy grounds. Judge Mikva's dissent was based primarily upon the procedure adopted by the court of granting the motion for summary affirmance. He felt that the case warranted full

briefing, a transcript, and oral argument. The court's opinion concluded that there was no dispute as to the facts and that the decision of the trial court was in accordance with established law. The Court notes that, in the instant case, the instruction on credibility as requested by defense counsel in *Glover* was given and that no request was made for a *Thomas* instruction on a deadlocked jury by either counsel.

There are several factors that are useful in determining whether a judge has properly exercised his discretion to declare a deadlocked jury: (1) a timely objection by the defendant; (2) the jury's collective opinion that it cannot agree; (3) the length of the deliberations of the jury; (4) the length of the trial; (5) the complexity of the issues presented to the jury; (6) any proper communications the judge has had with the jury; and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict. *Arnold v. McCarthy*, 566 F.2d 1377, 1387 (9th Cir.1978).

Applying each of these factors to the facts in this case, it is undisputed that the defendant did not make a timely objection to the declaration of a mistrial or to the discharge of the jury though he did address the Court requesting that he might interview the jury and that defendant be released on bond. Given that the first trial had ended in a hung jury, and that the defense had notice of the contents of the note sent to the judge in the second trial saying that the jury could not reach a unanimous verdict, and that the Court had engaged the foreperson in a colloquy concerning the jury's inability to reach a verdict and the futility of further deliberation, the defendant cannot now be heard to complain that he did not know that the judge would declare a mistrial. The defendant should have realized that a mistrial was imminent. A simple objection at any point prior to the discharge of the jury would have sufficed. Counsel could also have easily made a request to approach the bench so as not to alert the jury to an objection to any mistrial. As it stands, the

defendant did not timely object to the declaration of a mistrial.

It is generally agreed that an objection after the declaration of a mistrial or the discharge of the jury would serve little or no purpose except to put the judge on notice of a motion for dismissal on double jeopardy grounds. An objection to the declaration of a mistrial prior to the discharge of the jury would "show up" the trial judge and might prejudice the defendant in front of the jury, particularly if some members wanted to go home. *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d 7, 17 (3d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). But this analysis is largely unnecessary since it is whether an objection is made prior to a declaration of mistrial that counts. *Russo* is readily distinguishable on the facts. Both in his memoranda and at oral argument, defendant placed considerable reliance upon the *Russo* decision. This is a strong, well reasoned opinion in which the Third Circuit found that there was no manifest necessity for declaring a mistrial. This was a first degree murder case. The witness on whose testimony the state relied testified that he saw defendant shoot the victim at close range (two feet). The defense witness placed the distance at six to eight feet and alleged that the state's witness was the one who fired the shot. An FBI expert on powder residue was called to testify. He found no powder residue and said that if the distance were two feet, there would have been powder residue, whereas if the distance were eight feet, there probably would have been none. The testimony of the expert tended to support the defense witness.

One of the points raised by the defense was that the jury room had thin walls through which the deliberations could be overheard. Defense counsel alleged that it was common knowledge that the jury was leaning toward acquittal and requested a hearing, which was denied. After approximately fifteen hours of deliberation, the trial judge discharged the jury on the ground that they appeared to be exhausted and that further deliberation might produce an unjust verdict. The trial judge had asked the forelady whether the jury had reached a verdict, to which she had replied, "Not yet." On these facts, the Third Circuit found a quotation from *United States v. Jorn*, 400 U.S. at 486, 91 S.Ct. at 557, to be highly relevant. "[T]he defendant may have been deprived of '[a] valued right to have his trial completed by a particular tribunal,' which he believes may be 'favorably disposed to his fate.'" *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d at 12 (citations omitted). The facts on which the Third Circuit relied in reversing the district court do not exist in the case with which we are confronted. The jury had recently, in *Russo*, a habeas case, requested a reading of the FBI testimony which favored the defendant's witness and the defendant. The proffered evidence from defense counsel indicated a swing in the jury toward the defendant. While the New Jersey court found no evidence of manipulation by the trial judge, the Third Circuit concluded that there was no basis for his finding of manifest necessity.

Evaluating the factors mentioned in the *Arnold* case, that court said: "The most critical factor is the jury's own statement that it was unable to reach a verdict." *Arnold v. McCarthy*, 566 F.2d at 1387 (citing *United States v. See*, 505 F.2d 845, 851 (9th Cir.), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1974)). There are three indicia in this case of the jury's collective opinion that it could not agree on a verdict. The first is the note from the jury saying that it was unable to reach a unanimous decision. The second and third are the words of the foreperson that a unanimous decision could not be reached and that no further deliberations would be helpful. In circumstances such as these, it is proper for the trial judge to question the jury, "either individually or through its foreman, on the possibility that its current deadlock could be overcome by further deliberations." *Compare United States v. See*, 505 F.2d at 851 *with Arnold v. McCarthy*, 566 F.2d at 1387.

The defendant tries to make much of the fact that only the foreperson was asked if

further deliberations would be helpful instead of polling the jury individually or as a group. The following is the approved instruction for the District of Columbia for unanimity of verdict and the election of the foreperson which was given to the jury in Trial 2:

> Upon retiring to the jury room, you will select one from among your number to act as foreperson. The foreperson will preside over your deliberations, and will be your spokesperson before the Court in the event there is any matter about which you wish to communicate with the Court.
>
> The verdict[s] must represent the considered judgment of each juror. In order to return [a] verdict[s], it is necessary that each juror agree to the verdict[s]. Your verdict[s] must be unanimous.

Crim. Jury Instruction 2.69 (3d Ed.).

■ The trial judge in Trial 2 did inquire of the foreperson and was told that further deliberation would not be helpful. A poll of the jury in open court prior to the declaration of a mistrial would have been questionable but perhaps desirable, but only on the narrow issue of whether or not each juror agreed with the foreperson as to the futility of further deliberation. The risk with such a poll is that some jurors may feel that their positions on guilt or innocence and the secrecy of their deliberations are being compromised. Furthermore, polls of the jury are dangerous since responses about the numerical division of the jury have been held to be error *per se* under *United States v. Amaya*, 509 F.2d 8 (5th Cir.1975). This rule is designed to prevent coerced verdicts. *United States v. Gordy*, 526 F.2d 631, 636 n. 2 (5th Cir. 1976).

In any event, since there was no objection from counsel, no outward manifestation of disagreement from any of the jurors, and the strong presumption and previous instruction of the Court that a jury speaks through its foreperson, the Court was justified in taking the foreperson's word that his note represented the collective opinion of the jury.

The length of the jury's deliberations and the length of the trial are nebulous factors at best in the *Arnold* analysis. In this case, the jury had deliberated for approximately six hours on a case that took three and one-half days to try. There are no bright lines here. Six hours is certainly a reasonable deliberation period for a short trial.

The next factor is related to the lengths of trial and deliberation; the complexity of the issues presented to the jury is really much more determinative. In this case, the only issue was whether or not the defendant was in possession of the contraband. There were only four witnesses. This was not a complex trial or a difficult issue by any means.

As to proper communications with the jury, the judge had six such notes during their six hours of deliberations. Three were substantive, two were not and the sixth was an indication, clearly stated, that the jury was unable to reach a unanimous decision. From this correspondence and the subsequent responses to the Court, the trial judge could see that the jury was struggling with the case. However, the most compelling correspondence of all was the final note that stated, in no uncertain terms, that "the jury is unable to reach a decision (unanimous)." When the foreperson reiterated this sentiment on the record and in open court, the judge was justified in concluding that the jury was hung.

Finally, the effect of exhaustion and the impact which coercion of further deliberations might have on the verdict is a difficult standard to apply from a cold record. As previously stated, the suggestions that a good night's sleep and a fresh approach would help deliberations or that another jury would have to decide the case have been held to be coercive. *United States v. Thomas, supra.* In light of each of the foregoing factors falling on the side of declaring a mistrial and avoidance of coercion, the decision was inevitable.

In the cases cited by the defendant where the judge, on his own motion, declared a mistrial that was held to bar re-

trial, there are distinguishing facts. In *United States v. Gordy*, 526 F.2d at 633–34, there was a pronounced hurried atmosphere about the trial (the judge was trying to catch a plane) and the judge asked the foreman after 5½ hours of deliberations if there was a "hung jury." The foreman said that there was a unanimous not guilty verdict on one charge and a 6–6 split on another. Thereupon, a mistrial was declared as to the count on which the jury was split.

Nothing in a general sense about the case at bar could be characterized as rushed. In addition, the trial judge here did not ask the foreman if there was a "hung jury." Instead he asked, more properly, whether further deliberations would be helpful. In *Gordy* the jury had one verdict in hand of not guilty, and an impasse on another count. Such was not the case here, the judge did not initiate the idea of a hung jury.

The case *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir.1975), involved a trial judge's calling in the jury after 6½ hours of deliberation and without any indication from the jury that they were unable to agree, asking the foreman whether the jury could arrive at a unanimous verdict. A mistrial was declared when the foreman indicated that a unanimous verdict could not be reached. "The impetus for [the] mistrial was provided solely by the judge rather than by the jurors." *Id.* at 1043.

By contrast the trial judge in the case at bar did have a clear indication from the jury that they could not agree from the note that was sent. The impetus clearly came from the jury and not from the judge.

Finally, in *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d at 11, the trial judge, without any warning to counsel, called the jury in after 15 hours of deliberation in a murder trial, and asked the forelady whether the jury had arrived at a unanimous verdict. The forelady responded, "Not yet." Whereupon, the trial judge declared a mistrial after deciding that the jury was too exhausted to continue.

*Russo* is further distinguishable on the ground that in Trial 2 the jury foreman was unequivocal in saying that no further jury deliberations would be helpful. "Not yet" implies that further deliberations would in fact yield a verdict. Furthermore, the judge in *Russo* did not have any indication from the jury that it was deadlocked prior to his colloquy with the forelady. In this case the judge had a note from the jury before going into court saying that it was unable to reach a unanimous agreement.

### Conclusion

The defendant's motion for dismissal on double jeopardy grounds is denied. A mistrial was declared properly in both of the defendant's previous trials of this matter. When the Court learned from the foreman that the jury was deadlocked and that further deliberation would not be helpful, the circumstances constituted manifest necessity. While it is clearly a waste of resources, both judicial and prosecutorial, to try an accused a third time, it is also physically, emotionally and financially a strain on the accused. But the double jeopardy provision of the fifth amendment, however, as the Supreme Court said in *Wade, supra,* does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.