Annalee Dolls v. Sterling Supply     CV-94-418-M     08/14/95
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Annalee Mobilitee Dolls, Inc.,
      Plaintiff,

      v.                                     Civil No. 94-418-M

Sterling Supply Co., Inc.;
Lawrence Weiner; and Does 1 through 99,
      Defendants.


                              O R D E R


      Plaintiff Annalee Mobilitee Dolls, Inc. ("Annalee"), is

suing Sterling Supply Co., Inc. ("Sterling") and its President,

Lawrence Weiner ("Weiner"), for trademark infringement,

misappropriation, and unfair competition pursuant to 15 U.S.C.

§§ 1114 and 1125(a), NH RSA 358-A, and the common law, and for

copyright infringement under U.S.C. §§ 101 et seq.  Before the

court is defendants' motion to dismiss for lack of personal

jurisdiction and improper venue.  Fed. R. Civ. P. 12 (b)(2) and

12 (b)(3).  As explained below, defendants' motion is denied.


I.    **BACKGROUND**

      Annalee, a New Hampshire corporation, has manufactured dolls

under the "Annalee" trademark since 1936.  Annalee specializes in

designing, producing, and marketing collectible, posable, decorative dolls formed of "soft felt-like materials over stuffing filled wire forms." Annalee dolls have a distinctive "collocation" of features including painted-on faces and commercial or furrier stitched heads and limbs. The dolls are customarily dressed to celebrate seasonal themes, such as Easter, Thanksgiving and Christmas.

Annalee produces a limited number of dolls, which retail for between $20.00 and $30.00 each. As a result of the limited production Annalee dolls have become collector's items; some have been resold for as much as $1,500.00. The dolls are distributed nationally via retail department and gift stores, as well as through Annalee's own retail outlets and catalogs. Annalee dolls are marked with a stitched-in tag that identifies Annalee as the manufacturer, and they are generally sold in clear plastic wrappers that are devoid of identifying markers.

Defendant Sterling, based and incorporated in Kansas City, Missouri, specializes in the importation and sale of Christmas and other seasonal merchandise, including posable or "bendable" dolls. Sterling is not licensed to do business in New Hampshire

and has never had an office, telephone listing, bank account, or mailing address in New Hampshire. Sterling does not own, use, or possess any real or personal property in New Hampshire. Sterling does, however, have customers in New Hampshire, comprised of independent retailers and individual consumers. Sterling's merchandise is shipped to New Hampshire retailers from Missouri or directly from Sterling's overseas manufacturers. Sterling also sells its merchandise through a Christmas catalog that is distributed in New Hampshire.

Annalee's complaint alleges that defendants infringed on their trademark and copyright rights by selling two posable dolls that bear strong resemblance to a style of doll manufactured and sold by Annalee. Annalee claims that defendants have submitted to the jurisdiction of the courts of this state by transacting business within New Hampshire. Defendants counter that their New Hampshire contacts are insufficient to support the exercise of personal jurisdiction by this court, and further, that even if personal jurisdiction may be exercised, venue is improper.

## II.  PERSONAL JURISDICTION

### A.  STANDARD OF REVIEW

It is well established that the court's personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that jurisdiction. Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986). Jurisdictional allegations are construed in the plaintiff's favor, Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties, without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, plaintiff's demonstration of personal jurisdiction must be based upon specific facts set forth in the record in order to defeat defendants' motion to dismiss. And, "[i]n reviewing the record before it, a court `may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary

4

judgment.'" <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987)).

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show two things:  (i) the forum state's long-arm statute confers jurisdiction over the defendant, and (ii) the constitutional due process standard is met (by establishing that the defendant has sufficient "minimum contacts" with the forum state). <u>Kowalski</u>, 787 F.2d at 9-10.  As this court has previously noted, RSA 510:4, the New Hampshire long-arm statute relating to individuals "provides jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." <u>Estate of Mullen by Mullen v. Glick</u>, 1994 U.S. Dist. LEXIS 16020 (D.N.H. November 3, 1994) (quoting <u>Phelps v. Kingston</u>, 130 N.H. 166, 177 (1987)).  New Hampshire's corporate long-arm statute also authorizes jurisdiction over foreign corporations to the full extent permitted by the federal constitution but it has no corresponding statutory requirements. <u>McClary v. Erie Engine & Mfg. Co.</u>, 856 F.Supp. 52, 54 (D.N.H. 1994).  Hence jurisdiction over Weiner and Sterling (hereinafter both parties referred to as "Sterling") is

5

authorized so long as federal due process standards are satisfied.  See Mullen, at 6 ("[the court's] proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees.").

In order for the court to exercise personal jurisdiction over a foreign defendant in a manner consistent with the constitution, the plaintiff must demonstrate that defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Helicopteros Nacionales De Colombia, S.A. v. Hall, S.A. v. Hall, 466  U.S. 408, 414 (1984). Before finding that a defendant has such "minimum contacts," the court must be satisfied that defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant.  "General jurisdiction exists when the

6

litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Electrical, etc. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  A court may, however, exercise specific jurisdiction where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.  United Electrical, etc., 960 F.2d at 1088-89.

In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts.  Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Electrical, etc., 960 F.2d at 1089.  With respect to Sterling, the issue is one of specific jurisdiction.

7

**B.  ANALYSIS**

1.  Relatedness

Annalee's trademark infringement claim is related to Sterling's catalog distribution in New Hampshire.  See United Electrical, etc., 960 F.2d at 1089.  Sterling has intentionally directed its actions toward the New Hampshire consuming public. Sterling concedes that the Sterling-Christmas 1994 Catalog ("Catalog") was distributed in New Hampshire and that the Catalog advertised the allegedly infringing dolls.  The claim underlying this litigation, trademark infringement, is clearly "related to" or "arises out of" defendant's contacts with New Hampshire in the form of its catalog distribution and related efforts to make retail sales in New Hampshire of the allegedly offending products.

2.  Purposeful Availment

In order to satisfy the "purposeful availment" prong of the jurisdictional test, Annalee must show that Sterling's contacts constitute "`a purposeful availment of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the] court foreseeable.'"  Pritzker

8

<u>v. Yari</u>, 42 F.3d 53, 61 (1st Cir. 1994). Annalee has demonstrated that Sterling's in-state activities "represent a purposeful availment of the privilege of conducting business" in New Hampshire. <u>United Electrical, etc.</u> at 1089.

Annalee asserts and Sterling concedes that between 1993 and 1994 Sterling sold approximately $55,000.00 worth of merchandise in New Hampshire via its Catalog sales and independent retailers. Affidavit of Defendant Lawrence Weiner at p. 2. While Sterling denies that any of the allegedly infringing dolls were purchased in New Hampshire, over 7,000 units of the same were purchased elsewhere in 1994. <u>Id.</u> Annalee persuasively argues that Sterling "availed" itself of the New Hampshire market by virtue of its large volume of catalog distribution and $55,000.00 in sales therefrom. It should not come as a surprise to Sterling that it might be haled into court in this forum based upon that activity.

Sterling's Catalog distribution constituted an offer to sell the infringing dolls in New Hampshire and a purposeful invocation by Sterling of the benefits and protections provided by New Hampshire. In <u>Sollinger v. Nasco International Inc.</u>, 655 F.Supp.

9

1385 (D.Vt 1987), the exercise of specific jurisdiction over a defendant that distributed a catalog containing an allegedly infringing item in the forum state was held proper.  In Sollinger, a Vermont corporation alleged that a foreign corporate defendant infringed on its copyright by offering for sale and selling duplicates of its copyrighted "Holstein Stool." Sollinger at 1386.  Defendant's sole method of distribution in Vermont was through its catalog.  Id.  As in the present case, there was no evidence in Sollinger that the alleged offending product was ever sold in Vermont.  Id.  The court held that the defendant corporation had sufficient contacts with Vermont and that the alleged injuries "arose out of" those activities, stating the defendant corporation "`purposefully directed [its] activities at the residents of the forum' and [that the] . . . `litigation result[ed] from alleged injuries that [arose] out of or relate[d] to those activities . . .'"  Id., at 1388; citing Burger King, 471 U.S. at 472-73; Helicopteros, 466 U.S. 414.[1]

_____

[1]  The Sollinger court also noted that general jurisdiction was properly asserted over the defendant, pointing out that defendant, through its catalog, "`advertises and otherwise solicits business'" in Vermont and "sells its wares directly to Vermont residents."  Similarly, general jurisdiction over Sterling is properly asserted here, as it "carries on a `continuous and systematic, but limited, part of its general business . . .'" in New Hampshire.  Id., citing Helicopteros, 466 U.S. 415; citing Perkins v. Benguet Consolidated Mining Co., 342

10

Finally, Sterling's alleged trademark and copyright infringement in and of themselves constitute purposeful availment. The constitutional requirements of personal jurisdiction are met if "it [is] reasonably foreseeable that the consequences of the defendants' out-of-state activities could manifest themselves in the forum." Phelps, 130 N.H. at 172-3; see also, Hugel v. McNell, 896 F.2d 1, 4 (1st Cir. 1989) cert. denied, McNell v. Hugel, 494 U.S. 1079 (1990) ("knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact . . . whereby the [defendant] could reasonably expect to be haled into the forum State's court to defend his actions."); Concord Labs, Inc. v. Ballard Medical Products, 701 F.Supp. 272, 276 (D.N.H. 1988) (jurisdiction proper in New Hampshire "since the brunt of the harm would be felt in New Hampshire at the plaintiff's principal place of business").

In this case, it was foreseeable that any harm wrought by Sterling's alleged trademark and copyright infringement would be felt in New Hampshire, Annalee's principal place of business. First, it is readily apparent that Annalee would suffer economic harm in its principal place of business by Sterling's sale of

U.S. 437, 438 (1952).

11

7,000 allegedly infringing dolls that otherwise might have been
Annalee sales.  Secondly, the alleged infringement deprives
Annalee of a valuable right — the right to exclude others from
copying its protected doll.  Finally, it should be noted that
many courts, when determining the place of injury in patent
infringement suits, have concluded that the legal situs of the
injury is the principal place of business of the legal owner.
See e.g., Honeywell v. Metz Apparatewerke, 509 F.2d 1137, 1142
(7th Cir. 1975) (injury from infringement occurred at patent
owner's principal place of business); Acrison, Inc. v. Control
and Metering Ltd., 730 F.Supp. 1445, 1448 (N.D. Ill. 1990)
(same); but see, Beverly Hills Fan Co. v. Royal Sovereign Corp.,
21 F.3d 1558, 1571 (Fed. Cir. 1994) (injury occurs at place where
infringing sale is made).  The injury alleged here is an
analagous one.

    3.  Gestalt Factors

    The "Gestalt" factors, which make up the third element in
the specific jurisdiction analysis, are:

> [T]he plaintiff's interest in obtaining
> convenient and effective relief; the burden
> imposed upon the defendant by requiring it to
> appear; the forum's adjudicatory interest;
> the interstate judicial system's interest in

12

> the place of adjudication; and the common
> interest of all affected sovereigns, state
> and federal, in promoting substantive social
> policies.

Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (citations omitted). The burden is imposed on the defendant to establish the unreasonableness of the forum. Snow v. American Morgan Horse Assoc., Inc., 1989 WL 508485 (D.N.H.). Here, an examination of the Gestalt factors weighs heavily in favor of exercising personal jurisdiction over Sterling. Annalee has a strong interest in litigating the case here as its principal place of business is in New Hampshire. Although Sterling will be required to travel from Missouri to New Hampshire for the trial, the distance "creates no especially ponderous burden for business travelers." Pritzker, 42 F.3d at 64 (discussing travel from New York to Puerto Rico); see also VDI Technologies, 781 F.Supp. at 90-92 (California to New Hampshire). Also, because the complaint alleges serious harm to a New Hampshire resident, the state has a substantial interest in the resolution of the dispute. See e.g., Keeton v. Hustler Magazine Inc., 465 U.S. 770, 776 (1984) ("[I]t is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State"). Finally, no other forum has a

13

greater interest in deciding this case. Accordingly, the court finds that the Gestalt factors also support the exercise of in personam jurisdiction over defendant.

## III. VENUE

The general venue statute, 28 U.S.C. § 1391(b), governs both the federal and state law claims raised in this action. See <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 92 (D.N.H. 1991); citing <u>Concord Labs, Inc. v. Ballard Medical Products</u>, 701 F.Supp. 272, 275 (D.N.H. 1988). 28 U.S.C. § 1391(b) states in pertinent part that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated . . .

The general venue statute goes on to provide that a corporation resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Given the court's finding of personal jurisdiction over Sterling (Weiner and

14

Sterling), venue in this court is proper.[2]  28 U.S.C. § 1391 (b) and (c).

## IV.  CONCLUSION

For the foregoing reasons, personal jurisdiction is properly exercised by this court over defendants.  Accordingly, Sterling's Motion to Dismiss (document no. 15) is denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

August 14, 1995

cc:  Teresa C. Tucker, Esq.
     Michael Lenehan, Esq.
     Michael B. Hurd, Esq.

---

[2]  The court also finds that venue is proper under 28 U.S.C. § 1391(b)(2).  Furthermore, the court finds that venue, as it relates to the plaintiff's copyright infringement claim, is proper under 28 U.S.C. § 1400.