R & J Tool v. Manchester Tool        CV-99-242-M    04/21/00
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


R & J Tool, Inc.,
     Plaintiff

     v.                                Civil No. 99-242-M
                                       Opinion No. 2000 DNH 097
The Manchester Tool Company,
     Defendant


                            **O R D E R**


     R & J Tool brings this action seeking a declaration that it

does not infringe a patent held by defendant, The Manchester Tool

Company ("Manchester").  See 28 U.S.C. § 2201.  In the

alternative, it seeks a declaration that Manchester is barred by

the doctrine of laches from claiming it infringes the patent.

Manchester moves to dismiss, asserting that the court lacks

personal jurisdiction over it and saying that venue in this

district is improper.  See Fed. R. Civ. P. 12(b)(2).  See also 28

U.S.C. § 1406(a) (authorizing the court to either dismiss or

transfer a case when venue is improper).  R & J Tool objects.

## Background

R & J Tool is a New Hampshire corporation in the business of sharpening cutting inserts used in milling machines. As part of that business, it says that it has been sharpening inserts manufactured by Manchester since approximately 1991. It receives used cutting inserts directly from their owners, sharpens them, and sends them out to a third party for coating. The inserts are then returned directly to their owner for re-use. One of the inserts R & J sharpens is the "Separator," which is manufactured by Manchester and described and claimed in United States Patent No. 4,629,372.

Manchester is a Delaware corporation with its principal place of business on Manchester Road, Akron, Ohio. It is a wholly-owned subsidiary of the Federal Signal Corporation, also a Delaware corporation, with its principal place of business in Illinois. Manchester does not maintain any offices in New Hampshire, nor does it make any direct retail sales in this

district.  It does, however, have "Dealer Agreements" with at least two New Hampshire businesses, pursuant to which those businesses purchase and are authorized to sell Manchester's products (both within and outside New Hampshire).  See Exhibits 1 and 2 to Affidavit of Vandell Simpson, III (attached to document no. 7).  Manchester also has entered into dealer agreements with businesses outside of New Hampshire that apparently market and/or distribute Manchester's products in this district.  Consequently, Manchester's products are readily available for purchase in New Hampshire.  See Exhibit 2 to plaintiff's memorandum (document no. 8), Affidavit of Robert LaFlamme; Exhibit 3, Affidavit of Christine Lee; Exhibit 4, Affidavit of Glenn Welch; and Exhibit 5, Affidavit of Edward Philpot, Jr.  Indeed, Manchester concedes that in 1998, approximately $77,000 worth of its products were sold in New Hampshire.  Sales in 1999 were projected to be at a similar level.  Affidavit of Vandell Simpson, III, at para. 13.

In May of 1999, Manchester notified R & J that its "Separator" inserts were intended for single use and asserted

3

that R & J's sharpening of those inserts constituted an impermissible reconstruction of Manchester's patent.  Shortly thereafter, R & J filed this declaratory judgment action.

**Standard of Review**

I.   Personal Jurisdiction.

When personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction.  See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).  Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the

4

record in order to defeat a defendant's motion to dismiss. <u>See</u> <u>TicketMaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994). And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v.</u> <u>Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987)).

II. Venue.

Section 1406(a) of Title 28 authorizes the court to either transfer or dismiss a case when venue is improper. With regard to actions brought under the patent laws, venue is proper in any district in which: (a) the defendant resides; or (b) the defendant has committed acts of infringement. 28 U.S.C. § 1400(b). And, at least for purposes of venue, a defendant is deemed to "reside" in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, if a court may properly

5

exercise personal jurisdiction over a corporate defendant, venue is also proper.  Of course, that venue is proper in a particular forum does not necessarily resolve the question of whether the action might be transferred to a more convenient forum under 28 U.S.C. § 1404.  Here, however, Manchester does not seek a change of venue; it simply asserts that venue is not proper in this district and on that ground moves the court to dismiss R & J's complaint.

**Discussion**

I.   Personal Jurisdiction in a Federal Question Case.

When a defendant challenges a court's exercise of personal jurisdiction in a federal question case, the appropriate analytical framework is slightly different than that applied in a diversity case.  As the Court of Appeals for the First Circuit has observed:

> Because the instant case is premised on a federal
> question, it is distinguishable from cases that address
> personal jurisdiction in the context of diversity
> jurisdiction, 28 U.S.C. § 1332 (1988) - a context in
> which the focal point is, of necessity, the Fourteenth

6

Amendment. The distinction is of potential consequence. When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment. Inasmuch as the federalism concerns which hover over the jurisdictional equation in a diversity case are absent in a federal question case, a federal court's power to assert personal jurisdiction is geographically expanded.

United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) (citations omitted). See also Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir. 1995) ("Because subject matter jurisdiction over [plaintiff's] action exists by virtue of a federal question, rather than the diversity of the parties, the Due Process Clause that is at issue here is the Due Process Clause of the Fifth Amendment.") (citations and internal quotation marks omitted).

Because this case involves questions concerning the infringement of a patent, the court applies the law of the Federal Circuit to determine whether it may properly exercise personal jurisdiction over the defendant. See, e.g., 3D Systems,

7

<u>Inc. v. Aarotech Labs., Inc.</u>, 160 F.3d 1373, 1377 (Fed. Cir.

1998) ("when analyzing personal jurisdiction for purposes of

compliance with federal due process, Federal Circuit law, rather

than regional circuit law, applies."). Applying that law

requires the court to determine whether Manchester was properly

served under the Federal Rules of Civil Procedure. That inquiry,

in turn, requires the court to determine whether Manchester can

properly be served under New Hampshire's long arm statute and, if

so, whether personal jurisdiction can be exercised in a manner

consistent with due process. <u>See</u> <u>Akro Corp.</u>, 45 F.3d at 1544.

<u>See also</u> <u>Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.</u>,

484 U.S. 97, 104-05 (1987); Fed. R. Civ. P. 4(e).[1]

---

[1] Parenthetically, the court notes that the
jurisdictional analysis employed by the First Circuit is
substantially similar to that used by the Federal Circuit. In
both circuits, the ultimate focus is on: (a) the scope of the
state's long-arm statute and whether the defendant can be served
in a manner consistent with that statute; and (b) whether the
exercise of personal jurisdiction over the defendant would be
consistent with constitutional principles of due process and
fundamental fairness. <u>See, e.g.</u>, <u>United Elec. Workers v. 163
Pleasant Street Corp.</u>, 960 F.2d at 1085; <u>Lorelei Corp. v. County
of Guadalupe</u>, 940 F.2d 717, 719-20 (1st Cir. 1991).

II.  The Scope of New Hampshire's Long Arm Statute.

It is, by now, well established that New Hampshire's corporate long arm statute authorizes service upon an out of state defendant to the full extent permitted by the Constitution. See, e.g., Sawtelle v. Farrell, 70 F.3d at 1388; McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 55 (D.N.H. 1994).  And, because New Hampshire's corporate long-arm statute is coextensive with the limits of due process protection under the federal constitution, the court need only focus on whether the exercise of jurisdiction over Manchester would comport with federal constitutional guarantees.  See, e.g., Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) (holding that when the state's long-arm statute extends to the limits permitted by the Constitution, "the two-step inquiry folds into one: whether an exercise of personal jurisdiction over [the defendant] would offend Due Process.").

III. Constitutional Limits on Personal Jurisdiction.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Additionally, the court must be satisfied that the defendant's conduct bears a sufficiently "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). See also Akro Corporation, 45 F.3d at 1545 ("We, like the Seventh and Eighth Circuits, have nonetheless applied the 'minimum contacts' standard of International Shoe and its progeny to questions of personal jurisdiction in federal question cases, such as those arising under the patent laws.").

A. <u>Due Process and Minimum Contacts</u>.

As the Supreme Court has observed, "due process requires only that in order to subject a defendant to a judgment in personam, . . . he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). A party has "minimum contacts" with a forum if it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).

In assessing the nature and sufficiency of a party's contacts with a forum state, the Court of Appeals for the Federal Circuit employs the so-called "stream of commerce" theory. <u>See generally</u> <u>Viam Corp. v. Iowa Export-Import Trading Co.</u>, 84 F.3d 424 (Fed. Cir. 1996); <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558 (Fed. Cir. 1994). Under that theory, a

plaintiff may establish that a defendant has "minimum contacts" with the forum state by showing that the defendant placed its products into the stream of commerce, knowing that those products would likely make their way into the economy of the forum state. See, e.g., Beverly Hills Fan Co., 21 F.3d at 1565-67 (collecting cases).

Here, Manchester's contacts with New Hampshire are fairly substantial. Perhaps most importantly, it established and maintains business relationships with New Hampshire entities, thereby creating a regular distribution channel through which its products are marketed and sold in this forum. As noted above, those local distributors generate approximately $70,000 in annual sales for Manchester. Additionally, though certainly not dispositive of the issue, it is worth noting that here, as in Akro, the defendant directed its warning letters to plaintiff, in

the forum state.[2]  See Id., at 1546.  See also Nova Biomedical

Corp. v. Moller, 629 F.2d 190, 195 (1st Cir. 1980).


In support of its assertion that it does not have the

requisite "minimum contacts" with New Hampshire, Manchester

points out that all products are delivered to its dealers "free

on board" ("f.o.b.") at its plant in Ohio.  Accordingly, it says

that "products ordered by an independent dealer become the

property and responsibility of the dealer upon leaving Manchester

Tool's Akron, Ohio plant."  Defendant's memorandum at 7.  Thus,

Manchester seems to suggest that because its dealers actually

take title to its products in Ohio, it neither sells those

products in New Hampshire nor does it purposefully direct any of

_____

[2]    The Akro court was careful to distinguish the facts
presented in that case from those cases in which a defendant's
only contact with the forum arose from the fact that it directed
warning letters to a party in that district.  Akro, 45 F.3d at
1548 ("The case at bar involves an additional activity aimed at
the forum state - namely, the patentee's exclusive licensing of
one of the accused infringer's competitors within the forum
state.").  Here, Manchester has similar (albeit non-exclusive)
license agreements with in-state entities, through which its
products are marketed and sold in this forum.

13

its products into the New Hampshire economy.  The court

disagrees.  See generally North American Philips Corp. v.

American Vending Sales, Inc., 35 F.3d 1576, 1578-80 (Fed. Cir.

1994) (notwithstanding fact that infringing article was sold to

Illinois purchaser f.o.b. in Texas, "tort" of patent infringement

(for purposes of Illinois long-arm statute) occurred in

Illinois).  See also Wilden Pump & Engineering Co. v. Versa-Matic

Tool, Inc., 20 U.S.P.Q.2d 1788 (C.D. Cal. 1991).  And,

notwithstanding Manchester's assertions to the contrary, that

sales of its products in New Hampshire account for only a small

portion of its total national (or even international) sales is

not dispositive.  See, e.g., North American Philips, 35 F.3d at

1577 (holding that lower court had personal jurisdiction over

defendant notwithstanding defendant's assertion that its sales in

the forum state were "modest" and "negligible").  See generally

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)

(holding that although defendant's annual sales in forum state

amounted to less than one percent of its total national sales, it

is "unquestionable that New Hampshire jurisdiction over a

14

complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause that a State's assertion of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the defendant and the State.").

In light of the foregoing, the court concludes that: (1) Manchester purposefully directed activities at residents of New Hampshire within the meaning of the due process inquiry employed by the Court of Appeals for the Federal Circuit; and (2) this declaratory judgment action arises out of or relates to those activities. See generally Akro, 45 F.3d at 1546-49 (concluding, on facts very similar to those presented here, that the pending declaratory judgment action arose out of, or related to, defendant's in-state activities). See also Nova Biomedical Corp. v. Moller, 629 F.2d at 193 (concluding that where defendant/patentee sent warning letters into the forum, entered into licensing agreements with businesses in the forum, and sold products to those licensees, such contacts were "extensive and

15

ongoing" and observing that "there is little dispute that the assertion of jurisdiction would comport with due process").

B.   Reasonableness.

The second prong of the Federal Circuit's jurisdictional inquiry requires the court to determine whether the exercise of jurisdiction over Manchester would be reasonable and consistent with traditional notions of fair play and substantial justice. In other words, while "minimum contacts" with a forum state are a prerequisite to the exercise of personal jurisdiction, they are not, standing alone, sufficient to vest the court with such jurisdiction.

> Once a plaintiff makes the required showing that there have been sufficient minimum contacts by the out-of-state defendant with the forum State, the defendant may still defeat jurisdiction by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice.

<u>Viam Corporation</u>, 84 F.3d at 429.  <u>See also</u> <u>Beverly Hills Fan</u>

<u>Co.</u>, 21 F.3d at 1568.


So, to defeat the exercise of personal jurisdiction after the plaintiff has shown that a defendant has "minimum contacts" with the forum state, the defendant must present evidence that the exercise of personal jurisdiction would be unfair or unreasonable.  In resolving such a claim, the court must balance: (1) the burden on the defendant to appear in the forum; (2) the interests of the forum state in the underlying litigation; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the parties' disputes; and (5) the interest of the states in furthering their social policies.  <u>See</u> <u>Viam Corporation</u>, 84 F.3d at 429 (citing <u>World Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980)).  The Federal Circuit has observed, however, that occasions on which a defendant might defeat the otherwise constitutional exercise of personal jurisdiction "are limited to the rare situation in which the

17

plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co., 21 F.3d at 1568. See also Akro, 45 F.3d at 1549. Manchester has failed to demonstrate that this is one of those "rare situations."

Among other things, New Hampshire plainly has an interest in providing the forum for this litigation. Here, as in Viam Corporation, "the state has definite and well-defined interests in commerce and scientific development. If defendant's connections to the forum are so strong as to impact on those interests, as is true in this case, allowing the forum to exercise jurisdiction cannot be said to be unfair." Id., at 430. Nor is it unfair to conclude that a defendant has subjected itself to the jurisdiction of the courts in a forum in which it reaps the financial benefits of its patent through in-state sales conducted by its local distributors.

Manchester's arguments to the contrary, and its reliance upon Redwing Shoe, supra, while thoughtful, are ultimately unavailing. The facts in Redwing Shoe are readily distinguishable from those presented here. There, an alleged infringer brought a declaratory judgment suit against an out-of-state patent holder, seeking a declaration that it did not infringe the patent in question. In affirming the district court's conclusion that personal jurisdiction was lacking, the appellate court made two important findings. First, it rejected the plaintiff's assertion that the defendant had, by licensing various entities to use its patent, created a "distribution channel" by which it placed its product into the "stream of commerce." The court noted that defendant's licensing agreement with the in-state distributors and manufacturers was merely a covenant not to sue. It was not a means by which any products actually manufactured by the defendant were distributed in the forum state. Id., at 1362 ("[Defendant's] product is a covenant not to sue, not a shoe incorporating the patented technology. As such, [its] product never enters the stream of commerce."). The

19

court also reaffirmed its view that the mere direction of a warning letter into the forum state, without more, is insufficient to constitute "purposeful availment" or "minimum contacts."  Id. ("As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction.  Specifically, such letters cannot satisfy the second prong [i.e., fair play and substantial justice] of the Due Process inquiry.").

Here, however, Manchester's contacts with this forum consist of more than merely its having directed cease-and-desist letters to R & J.  As noted above, it maintains direct business relations with at least two in-state entities (and several other out-of-state entities) that distribute Manchester's products in this forum under non-exclusive license agreements.  While those sales do not account for a large percentage of Manchester's total national sales, they are not insignificant.

20

Manchester, then, has far more substantial contacts with the forum state than did the defendant in Redwing Shoe. See generally Motorola, Inc. v. PC-Tel, Inc., 58 F.Supp.2d 349, 353-56 (D. Del. 1999) (providing a detailed discussion of the Federal Circuit's jurisdictional analysis and distinguishing the defendant's forum contacts in that case from those of the defendant in Redwing). And, in light of the fact that Manchester's contacts with this forum were knowing and purposeful - aimed at selling its products to New Hampshire consumers and, thereby, increasing its overall national sales - the court concludes that Manchester anticipated (or reasonably should have anticipated) being haled into court in this forum. See Worldwide Volkswagen, 444 U.S. at 297. See also North American Philips, 35 F.3d at 1580 ("In this case, [defendants] placed a substantial quantity of infringing articles into the stream of commerce conscious that they were destined for [the forum state]. . . . Surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state,

however distant, to answer for any liability based at least in part on that importation.").

IV.   Venue.

Having concluded that the court may properly exercise personal jurisdiction over Manchester, it necessarily concludes that venue is proper in this district.  See 28 U.S.C. §§ 1391(c) and 1400(b).  See also Hollyanne Corp., 199 F.3d at 1307 n.1 (noting that, at least under the circumstances presented in that case, "venue and personal jurisdiction are co-extensive."); North American Philips, 35 F.3d at 1577 n.1 ("The venue issue is subsumed in the personal jurisdiction issue.  Venue lies ipso facto if we hold, as we do, that the district court has personal jurisdiction over [defendants].").  In other words, because the court may exercise personal jurisdiction over Manchester, section 1391(c) provides, at least for venue purposes, that Manchester "resides" in this district.  That, in turn, compels the conclusion that venue is proper in this district under section 1400(b), which states that a "civil action for patent

22

infringement may be brought in the judicial district where the defendant resides."

## Conclusion

In light of the foregoing, the court concludes that it may, consistent with constitutional principles of due process and fundamental fairness, exercise personal jurisdiction over Manchester. It also holds that, under 28 U.S.C. §§ 1391(c) and 1400(b), venue is proper in this district. Accordingly, Manchester's motion to dismiss for lack of in personam jurisdiction and improper venue (document no. 7) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 21, 2000

cc:  Michael J. Persson, Esq.
     Edward D. Philpot, Jr., Esq.
     Marc R. Scheer, Esq.

23